[Filed November 9, 1887.]

MARY J. WEBER, RESPONDENT, *v.* E. S. ROTHCHILD, ET AL., APPELLANTS.

FRAUDULENT CONVEYANCE— AGREEMENT TO RECONVEY.— Where at the time of the execution of a deed for the expressed consideration of two thousand five hundred dollars, an agreement is made to reconvey in a year for the same amount, and the property was of the value of six thousand dollars, such deed and agreement create a trust in favor of the grantor, and is as against the grantor's wife, who is about to prosecute a suit for a divorce and alimony, fraudulent.

PURCHASER FROM FRAUDULENT GRANTOR— HOW PROTECTED. — A purchaser from a fraudulent grantor can only protect himself when the transaction is assailed for fraud, by alleging and proving that he paid a valuable consideration for the property, giving the facts; that at the time of such payment he had no notice of the outstanding equity or fraudulent intent, as the case may be, and that he acted in good faith.

CODE—PLEADING UNDER—EQUITY PLEADING.— The Code has abolished forms; it has not destroyed substance. Therefore a plea of *bona fide* purchaser, for value and without notice, must be as full under the Code as under the former system of equity pleading.

BONA FIDE PURCHASER— BURDEN OF PROOF.—A party pleading that he is a *bona fide* purchaser for value and without notice has the burden of proof on that issue. It is an affirmative defense.

BURDEN OF PROOF.— When a fact is more particularly within the knowledge of one party than the other, the burden of proving such fact is on such party.

PRACTICE—ANSWER TO ORIGINAL COMPLAINT— WHEN TREATED AS ANSWER TO AMENDED COMPLAINT.— Upon the trial and after the evidence was all in the plaintiff amended her complaint touching causes of divorce so as to conform the pleadings to the facts proved, and the defendant E. S. R. did not amend his answer nor apply to the court for leave to do so, and his answer was treated as an answer to the amended complaint in the court below and in this court. *Held,* that E. S. R. not having been prejudiced in any manner could not be heard to complain in this court for the first time that he had not answered said amended complaint.

FRAUDULENT CONVEYANCE. — *Held,* under the particular facts disclosed by the evidence in this case, that the defendant W., at the time he conveyed the property in controversy, intended to hinder, delay, and defraud the plaintiff in the prosecution of her contemplated suit for a divorce, and for a recovery of alimony and one third of Weber's land.

FRAUDULENT CONVEYANCE— ANSWER— BONA FIDE PURCHASER.— To constitute a good answer that defendant is a *bona fide* purchaser for value and without notice, it must be alleged: (1) Seisin of the grantor in fee, or a pretended seisin and possession at the time of the conveyance, if it pretended to confer immediate possession. (2) A conveyance and not articles merely. (3) The consideration and actual payment of the same.

REPLY UNNECESSARY, WHEN.—If the answer is wholly lacking in substance as to these essentials no reply is necessary.

ONUS PROBANDI— WHEN UPON THE DEFENDANT. — When it appears that the grantor in a deed intended to defraud his wife out of alimony in a suit for a divorce which she was about to commence, and that he made the deed for that purpose to E. S. R, *held,* that E. S. R. can only protect his title by alleging and proving

XV. OR.— **25.**

that he is a *bona fide* purchaser for value and without notice; *held*, also, that the facts of the payment of value, and when paid, as well as the want of notice, are facts lying peculiarly within the knowledge of the defendant E. S. R., and that for that reason the obligation of proof lies with him.

APPEAL from Multnomah County.

*H. T. Bingham*, and *Cornelius Taylor*, for Respondent.

*Emmons & Emmons*, and *Joseph Simon*, for Appellants.

STRAHAN, J. — The objects of this suit were, *first*, to obtain a dissolution of the marriage existing between plaintiff and the defendant Emil Weber, the care and custody of the children born of said marriage, alimony, and one third of the real property of the defendant Weber; and *second*, to set aside and annul, as fraudulent, a certain deed made by the defendant Emil Weber to the appellant Rothchild, of certain property in Multnomah County. The deed included the house and lot in the city of Portland, where Weber and his wife had resided for a number of years, the furniture therein, and a piece of farm land in Multnomah County. The plaintiff obtained a decree in the court below in accordance with the prayer of her complaint, and for five thousand dollars alimony, and the conveyance to Rothchild was set aside as fraudulent. From so much of the decree as annuls this deed Rothchild has appealed to this court, and the only questions presented here for our consideration are those between the plaintiff and Rothchild.

After the evidence had all been taken in the court below, and before final decree, the court allowed the complaint to be amended so as to conform the pleading to the facts proved. This amended pleading does not affirmatively appear from the record to have been served on Rothchild, nor was it necessary, nor did he file an answer to the same. The new matter inserted in the amended pleading related entirely to the causes of divorce relied upon by the plaintiff, and did not affect the transaction between the defendants as to the property. In addition to this, Rothchild appeared and filed exceptions to the referee's report, and so far as appears, his answer to the first amended complaint must have been treated as an answer to the second amended com-

plaint, and it has been so treated in this court.   It has not been suggested that there is anything in the plaintiff's second amended complaint that is not as fully met by this appellant's answer to the first amended complaint as he desired to meet it, and we cannot see that any injury will result to any party by so treating it.   In addition to this, no objection appears to have been made in any form in the court below to the state of the pleadings, but it is made here for the first time.   We will, therefore, for the purposes of this case, treat the answer of Rothchild as an answer to the plaintiff's second amended complaint.

The complaint alleges substantially that on the third day of November, 1886, the defendant Weber left his place of abode in Portland, Oregon, and absconded and secreted himself at Denver, Colorado, for the purpose of avoiding the service of a summons in this cause; that he then had in money about ten thousand dollars, which he withdrew from Ladd & Tilton's bank in the city of Portland, and that just prior to his departure from this State he fraudulently assigned and transferred the real and personal property in controversy to the defendant Rothchild, for the purpose of hindering and delaying the plaintiff in the prosecution of her suit for divorce against Weber, and defeating any decree that might be made therein; that the consideration was inadequate, and that said Rothchild did not purchase said property in good faith, but accepted the conveyance thereof with an agreement that he would reconvey the same to Weber, or such person as he should designate, when thereto requested, and that said Rothchild holds the same in trust for Weber.

The separate answer of the appellant denies the fraud charged, and then alleges that on or about the third day of November, 1886, he purchased the property in controversy in good faith from the defendant Weber for and in consideration of the full sum of two thousand five hundred dollars, paid to said defendant Weber by this defendant.   The answer then alleges that the only agreement which the defendant Rothchild made with Weber respecting said property was in writing, a copy of which is then set forth in the answer *in hæc verba.*   This agreement bears even date with the deed, and in effect binds Rothchild in the

penal sum of ten thousand dollars, to be void if he shall perform
the conditions specified in said writing on his part to be per-
formed.    This agreement recites a money consideration of two
thousand five hundred dollars, and it is then further stated in
said writing, in substance, that a material part of the consider-
ation for said conveyance " is the agreement on my part to resell
and reconvey all of said real property, and every portion
thereof, to said Emil Weber, upon the payment to me by him
of the full sum of three thousand dollars, in gold coin of the
United States, at any time within the period of one year from
the date of this instrument, and to execute a good and sufficient
deed of conveyance for all of the said real property conveying
the *same title* and interest therein which I have received from
said Emil Weber, upon such payment by him of said sum of
three thousand dollars within said year; and whereas, I hereby
agree to and with the said Emil Weber to execute said deed of
conveyance, and reconvey all of said real property to him, upon
the foregoing consideration."    Said agreement further obligated
said Rothchild to execute a deed of conveyance upon the pay-
ment of three thousand dollars within one year, conveying the
title of all of said real property free from all encumbrances
placed thereon, or suffered to be placed thereon by myself, or any
grantees or assignees, to said Weber.

We do not care to recapitulate the facts touching the relations
between Weber and his wife for some time prior to the second
day of November, 1886, as they are disclosed by this record.
It suffices to say that they furnished ample causes for a divorce,
in favor of the plaintiff, and that these facts appeared to have
come to the knowledge of the plaintiff not long prior to that
time, and the defendant Weber also became aware about that
time that his wife had acquired a knowledge of the facts upon
which this suit is founded.    The facts and circumstances leave
no doubt in the mind of the court that the conveyance to Roth-
child was made and designed by Weber to defeat the plaintiff in
the recovery of any part of his (Weber's) property, or of alimony
in her contemplated suit for a divorce.    But it is argued by
counsel that however fraudulent may have been his acts, Roth-

child must remain unaffected, unless the evidence proves that he had knowledge of such fraudulent intent, and participated in it. This is undoubtedly true, if Rothchild's acts were in good faith. But here two material facts appear, which, under all the circumstances, are of so cogent a character that they seem to call upon him for an explanation; in other words, that he should show that he paid a valuable consideration for the property, and that he did it without notice. The first is, that he made the contract set up in his answer, which, in the absence of any explanation, may well be regarded as creating a secret trust for Weber's own use and benefit; and the second is, that the only evidence offered on the subject tends to prove that the property in controversy was, at the time of the conveyance, of the value of from six thousand to eight thousand dollars. In addition to this the rental value and use of the property in Portland alone, as shown by Mr. Rothchild's affidavits filed in this cause, and used upon his motion to dissolve the injunction herein, is seventy-five dollars per month. Estimating the value of this property according to the income which it is capable of producing, it ought to be worth, at the very least, from six thousand to seven thousand five hundred dollars, which, added to the value of the farm, fifteen hundred dollars, also included in the deed, and we have an aggregate value of from eight thousand to nine thousand dollars. To sell this property for two thousand five hundred dollars was too great a sacrifice. The price alleged to have been paid was so entirely inadequate as to have put a prudent man on inquiry. But without placing the decision of this case on the ground suggested, there is another question presented which deserves attention. It is the purchaser for value and without notice from a fraudulent grantor who is protected under the statute. Does the defendant's answer show him to be such purchaser? To constitute a good defense, facts must be alleged showing that the purchaser paid a valuable consideration for the property; that at the time of the payment he had no notice of the outstanding equity, or, as in this case, of the fraudulent intent of his grantor, and that he acted in good faith. The same elements which were necessary to constitute a good plea in

bar in this class of cases under the former equity practice are necessary to make a good answer under the Code.

The Code has only abolished forms; it has not destroyed substance. The answer must therefore "aver that the person who conveyed or mortgaged to the defendant was seised in fee or pretended to be seised, and was in possession, if the conveyance purported to be an immediate transfer of the possession at the time when he executed the purchase or mortgage deed. It must aver a conveyance, and not articles merely; for if there are articles only, and the defendant is injured, he may sue at law upon the covenants in the articles. He must aver the consideration for, and the actual payment of it; a consideration secured to be paid is not sufficient." (Story on Equity Pleadings, § 805.) Further: "The plea must also deny notice of the plaintiff's title or claim previous to the execution of the deed, and payment of the consideration; and the notice so denied must be notice of the existence of the plaintiff's title, and not merely notice of the existence of a person who could claim under that title. . . . . But the notice of fraud must also be denied generally, by way of averment in the plea; otherwise the fact of notice or of fraud will not be at issue. . . . ." (Story on Equity Pleadings, § 806.)

Tested by these rules, the defendant's answer seems wholly wanting in substance to present the question sought to be litigated here. It is true, there is no reply to the defendant's answer sent up in this record; but the answer being wholly lacking in substance, it is conceived that no reply was actually necessary. The failure to reply only admits material facts that are well pleaded. It is the *bona fide* purchaser for value, in good faith and without notice, who is entitled to the protection of a court of equity, as against the person sought to be defrauded by the conveyance. And this brings us to the examination of a very important question in this case, and that is this: Is the plaintiff required to prove a negative, by showing that the defendant did not pay a valuable consideration, or, having shown the fraudulent intent and purpose of the grantor, may he stop and require the grantee to prove that he paid value, in order to protect his title? Here the defendant Rothchild has

alleged facts in one part of his answer tending to show that he is a *bona fide* purchaser for value without notice of this property, but he has offered no evidence whatever on those issues. The plea of a *bona fide* purchaser for value as here alleged is an affirmative defense interposed by the defendant, and in this connection it is not perceived that it differs from other affirmative defenses.   The party having the affirmative of the issue must offer evidence to support it.

Another rule of law, equally elementary, which is frequently applied in such cases, is that when a fact is peculiarly within the knowledge of a party, he must furnish the necessary evidence of such fact.   In speaking of a conveyance found to be fraudulent on the part of the grantor, in *Tredwell* v. *Graham*, 88 N. C. 208, the Supreme Court of that State said: "The deed itself, though evidence conclusive, as to all matters between the parties, furnishes no evidence of the truth of the matters contained in its recitals, as against strangers, for as to them it is strictly *res inter alios acta*.   (*Claywell* v. *McGimpsey*, 4 Dev. 89; *Griffith* v. *Tripp*, 8 Jones [N. C.] 64.)   If voluntary, the law pronounces it fraudulent as to creditors, and he who took it must have had notice of that fact.   As said by Pearson, C. J., in *Causler* v. *Cobb*, 77 N. C. 30, "when a grantor executes a deed with intent to defraud his creditors, the grantee can only protect his title by showing that he is a purchaser for a valuable consideration and without notice of the fraudulent intent on the part of his grantor."   And in *Callan* v. *Statham*, 23 How. 477, it is said: "As they aver the payment was a transaction between themselves, and the principal part of a note was held by the vendee, which he surrendered, the evidence in respect to which is therefore exclusively within their own knowledge, it would have been more satisfactory if they had given some proof in support of the answers, especially when there were other accompanying circumstances tending to excite distrust and suspicion as to the *bona fides* of the deed."

So, also, in *Moshier* v. *Knox College*, 32 Ill. 155, the same rule was applied in a similar case.   The court said: "But apart from all this, the appellees ought to retain this decree, because it

is shown the indebtedness was for the purchase money of the premises, and appellant has not shown he was a *bona fide* purchaser for a valuable consideration, paying his money at the time, on the faith of the title so purchased. It was incumbent on the appellant to show not only that he had a conveyance for this land, legal in form, but that he actually paid for the land. It is not sufficient that he may have secured the payment of the purchase money; he must have paid it in fact before he had any notice of the appellee's equitable title. This is an essential element in the equity, which must exist in order to support appellant's claim, which he attempts to uphold. If he has not paid the purchase money, no wrong is done him by taking from him a legal title which cost him nothing." And the same principle is stated and applied in *Florence Sewing Machine Co.* v. *Zeigler,* 58 Ala. 221; *Zimmer* v. *Miller,* 64 Md. 296; *Venable* v. *Bank of United States,* 2 Peters, 107; *Zelnicker* v. *Brigham,* 74 Ala. 598; *Purkitt* v. *Polack,* 17 Cal. 327; *Brown* v. *Texas Cactus H. Co.* 64 Tex. 396. And the principle is stated as elementary in Bump on Fraudulent Conveyances, p. 53.

There is another objection, I think, equally fatal to the defendant's claim. The writing which the appellant set up in his answer was made by him at the same time of the execution of the deed; at least they both relate to the same subject-matter, bear even date, and are between the same parties. We must therefore hold, especially in the absence of any evidence to the contrary, that they were executed at the same time, and taken together they constitute one entire transaction. Taken together, then, their effect was to create a trust in favor of Weber. This effect becomes distinctly manifest when the terms of the bond are considered. It is therein declared that "one of the inducements; and a material part of the consideration for said conveyance, is the agreement on my part to resell and reconvey all of said real property, and every portion thereof, to said Emil Weber, upon the payment to me by him of the full sum of three thousand dollars," etc. The meaning of this clause evidently is, that the right to repurchase was a part of the consideration for the deed, and in this way a valuable right or interest was reserved

to the grantor, and this of itself would render the deed fraudulent and void.    (*Sims* v. *Gains*, 64 Ala. 392.)

It follows from the views expressed that there was no error committed by the court below, and its decree is affirmed.

LORD, C. J., concurs in the result.