Argued March 21, affirmed June 6, 1916.

# BOND v. ELLISON.*

(157 Pac. 1103.)

**Mortgages—Mortgagee as Bona Fide Purchaser—Burden of Proof.**

1. One claiming under a mortgage as an innocent purchaser for value, without notice, has the burden of proof; the defense being an affirmative one.

**Mortgages—Rights of Bona Fide Mortgagee.**

2. Under Section 7397, L. O. L., declaring that every conveyance made with the intent to hinder, delay or defraud creditors shall be void, Section 7400, that the question of fraudulent intent shall be deemed a question of fact, and Section 7401, that the provisions of the chapter shall not apply to a bona fide purchaser for value without notice, a mortgagee of one who acquired property through fraud, and then encumbered it, takes it free from the claims of the original grantors if he did not have knowledge of the fraud, or of facts sufficient to put him on inquiry.

**Mortgages—Bona Fide Purchaser—Evidence.**

3. In a suit to set aside a conveyance and mortgage given by the grantee, evidence held to warrant a finding that the mortgagee was not charged with notice of the fraud of the grantee, his grantor in procuring the conveyance.

[As to bona fide purchasers from fraudulent vendees, see notes in 28 Am. Dec. 688; 28 Am. Dec. 734.]

From Lane: LAWRENCE T. HARRIS, Judge.

Department 2. Statement by MR. JUSTICE BEAN.

This is a suit by Samuel L. Bond and others against James Ellison to cancel a conveyance of a quarter-section of timber land from plaintiff to the Bellingham Development Company, and a mortgage executed by the last-named company to James Ellison. The history of the transaction is about as follows: In May, 1911, Samuel L. Bond and ten associates were the owners of about 1,900 acres of timber land in Lane County, Oregon. They transferred the property to Marvin L. Hammitt and Hal E. Wood, as trustees, to hold the

---

*As to effect of statute making fraudulent intent a question of fact, see note in 18 L. R. A. 611.        REPORTER.

naked title in trust and to convey the same upon certain terms and conditions.

The Columbia River Orchard Company had an irrigation scheme at Wahluke, Grant County, Washington, in the promotion of which they procured a lot of so-called water mortgages from the settlers in that territory, conditioned that the company should put water on their lands within a given time for $100 an acre. With these water mortgages as an asset the company issued an unlimited and unknown quantity of bonds which were traded off for properties when possible. These were issued by the Columbia River Orchard Company and were guaranteed by the Washington Orchard Irrigation & Fruit Company, and made payable to the Oregon & Washington Trust Company, all organized and run by the same people. The mortgages were put up with this trust company as security for bonds. The company obtained contracts on a half section of school land and a section of other land, which it subdivided into small tracts and sold on contract at $350 an acre. These documents were deposited as security with the water mortgages, and also required the company to put water on the land. Bonds were traded for the stock of the Bellingham Development Company, and that corporation was used to further the fraudulent designs of W. E. De Larm and H. A. Biehl, two of the prime movers in the scheme at Wahluke, and their associates. They claimed that they had expended $140,000 on the Wahluke project, and had 17,000 acres of land within that territory worth $350 an acre; that the bonds were secured by 125 per cent of their face value in good valid securities deposited with the trust company; that they had traded for the Tobey Bros. wheat ranch in Gilliam County, Oregon, which was behind the bonds. Messrs. Hammitt and Wood and

several of the eleven owners of the timber land personally made examinations of the financial plans which De Larm and his cohorts were conducting, including the Bellingham Development Company, resulting in each of the eleven owners in writing requesting Hammitt and Wood, trustees, to convey their properties to the last-named company for bonds of the Columbia River Orchard Company at par. On May 20, 1911, Hammitt and Wood executed to the development company a deed to the property and received the consideration in bonds which were practically worthless, dividing them among the eleven owners. Ellison was a carpenter by trade and had resided in Vancouver, B. C., for about 22 years, where he had made some money in real estate. He was more familiar with the manner of transacting business there than in the United States. On May 29, 1911, a real estate dealer in Seattle by the name of Munson informed him that a certain party desired to obtain a loan on some valuable timber lands in Oregon, and took him to the office of De Larm and Biehl. The latter represented that the company had spent $140,000 in the construction of a 17-mile ditch on the Wahluke project; that it would be necessary for it to borrow $25,000 or $30,000 more to complete the irrigation scheme and thereby supply water to a vast area of land; and that it would secure the loan by giving Ellison a first mortgage upon approximately 2,400 acres of timber lands in Lane County, Oregon, worth $80,000, title to which was good. De Larm & Biehl exhibited a copy of the report of a timber cruiser, giving the amount of timber thereon. After some negotiations Ellison agreed to loan the sum of $25,000, provided he could get a purchaser for a $25,000 mortgage held by him on property in Vancouver, B. C. This proposition was accepted by De

Larm & Biehl, who caused a note and mortgage upon the timber land to be prepared, which were executed on May 31, 1911, payable to James Ellison one year after date, with interest at 8 per cent per annum. Ellison gave De Larm & Biehl a certified check for $10,000, and afterward went to Vancouver, B. C., where he negotiated a sale of his mortgage and paid the balance of $15,000. After the mortgage became due a foreclosure suit was instituted in Lane County, Oregon, and about the same time the eleven owners of the timber land brought suit to cancel their deeds to the Bellingham Development Company, alleging failure of consideration, and that the deeds were obtained by means of fraudulent representations. These cases were consolidated and tried together. The Circuit Court found in favor of James Ellison, the defendant, and plaintiffs appeal.                    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Woodcock & Smith* and *Messrs. Williams & Bean,* with an oral argument by *Mr. John M. Williams.*

For respondent there was a brief with oral arguments by *Mr. John H. McNary* and *Mr. Charles L. McNary.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Ellison claims under his mortgage as an innocent purchaser for value without notice. This is an affirmative defense, and is alleged by the defendant, and must be proved: *Weber* v. *Rothchild,* 15 Or. 385, 389, 391 (15 Pac. 650, 3 Am. St. Rep. 162) ; *Hyland* v. *Hyland,* 19 Or. 51, 55 (23 Pac. 811) ; *Barnes* v. *Spencer et al.,* 79 Or. 205 (153 Pac. 47, 51).

2, 3. The main question presented in this case is one of fact. Realizing the importance of the suit, the

number of people interested, and the amount involved, we have given the record our most careful attention and consideration. The evidence is overwhelmingly in favor of the contentions of the defendant James Ellison, who in good faith loaned $25,000 on the secur-- ity of the land in question without any notice or knowledge of any equities of the claimants. While looking back it might possibly seem otherwise, yet at the time of the execution of the mortgage there was no real ground for suspicion of bad faith on the part of the defendant. To mention one instance will, perhaps, suffice. Ellison owned some bonds in the Columbia River Orchard Company and by De Larm and his confederates was induced to believe that the Wahluke project would in the end come out all right. He was not warned nor informed to the contrary. He was "roped in" by De Larm and his assistants. On the other hand, showing the astuteness of these men, the several plaintiffs in these cases, who also now own bonds of the Columbia River Orchard Company, were warned by a local bank in the vicinity of the project that the bonds "were not first class," and yet De Larm and his coconspirators succeeded in convincing them that the bank was unfriendly to the project and its promoters, and that the bonds were all right. The corporation is defunct, and some of the promoters have been prosecuted and punished.

Our statute provides that every conveyance or assignment in writing of any estate or interest in lands, and every charge upon lands made with the intent to hinder, delay or defraud creditors, or other persons of their lawful suits or damages, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void: Section 7397, L. O. L. The question of fraudulent intent in all cases arising under

the provisions of this chapter shall be deemed a question of fact and not of law: Section 7400, L. O. L. The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor: Section 7401, L. O. L. In order to avoid a sale upon the ground of fraud, the vendee must have had notice of the vendor's fraudulent designs. Notice of the fraudulent intent of the vendor may be inferred from the circumstances; but the mere negligence or want of diligence in not inquiring into the facts known to him and calculated to put him upon inquiry is not sufficient to charge him with notice of fraud. Hence the question is whether or not James Ellison did in fact know or believe that the mortgagors intended to defraud anyone, and not whether or not he was negligent in failing to discover the fraudulent intent: *Bowman* v. *Metzger,* 27 Or. 23 (39 Pac. 3, 44 Pac. 1090); *Jennings* v. *Frazier,* 46 Or. 470 (80 Pac. 1011); *Livesley* v. *Heise,* 48 Or. 147 (85 Pac. 509); *Ball* v. *Danton,* 64 Or. 196 (129 Pac. 1034); *Coffey* v. *Scott,* 66 Or. 465 (135 Pac. 88); *Van Raalte* v. *Harrington,* 101 Mo. 603 (14 S. W. 710, 20 Am. St. Rep. 626, 11 L. R. A. 424); *Stearns* v. *Gage,* 79 N. Y. 102.

We are convinced that the findings and decree of the lower court were correct. The decree is therefore affirmed.                                    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BURNETT concur.

MR. JUSTICE HARRIS took no part in the consideration of this case.