Argued October 1, reversed and dismissed October 21, rehearing denied December 9, 1919.

## FARMERS' NAT. BANK *v.* RENFRO.

(184 Pac. 564.)

**Judgment—In Suit by Creditor to Subject Lands to Judgment, Defendant can Question Origin of Creditor's Claim.**

1. Where a judgment was rendered in Oklahoma against defendant's husband and the judgment creditor then sued defendant and husband in Oregon, asserting that a conveyance by the husband to defendant was fraudulent, and seeking to subject to its claim Oregon lands acquired by defendant with the proceeds of the property conveyed to her, *held* that defendant might inquire into the origin of the claim of the judgment creditor.

[As to transfers between husband and wife, see notes in 19 Am. St. Rep. 657; 20 Am. St. Rep. 715; 90 Am. St. Rep. 497.]

**Fraudulent Conveyances—Defendant Grantee must be Without Notice of Fraud, and have Paid Valuable Consideration.**

2. Under Sections 7397, 7400, 7401, L. O. L., three things must concur to protect the title of a purchaser of property where the conveyance is attacked by creditor of vendor as fraudulent: (1) He must buy without notice of bad intent on the part of vendor to defraud; (2) he must be a purchaser for valuable consideration; and (3) he must have paid the purchase money before he had the notice of fraud.

[As to the knowledge of vendee as affecting validity, see note in 34 Am. St. Rep. 395.]

**Fraudulent Conveyances—Evidence Insufficient to Show Transaction Fraudulent.**

3. In a suit by an Oklahoma corporation which had recovered in courts of that state a judgment against defendant's husband attacking as fraudulent a conveyance of property by the husband to her, and seeking to reach land acquired in Oregon by defendant with the proceeds of the property conveyed, etc., evidence *held* insufficient to show that the transaction was fraudulent, and open to attack, within Sections 7397, 7400, 7401, L. O. L.

    4. A judgment of the courts of one state is, as to matters adjudicated, entitled to full faith and credit in another state.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 1.

The plaintiff, an Oklahoma corporation, having recovered judgment in a court of that state against C. R. Renfro, one of the defendants here, as for money had and received, brought an action against him in the Circuit Court of Lane County in this state upon said judgment and recovered an Oregon judgment for $3,482 with interest, together with costs and disbursements. This suit by the bank is against Renfro, his wife, Margaret Renfro, and his brother, A. R. Renfro. In substance, the complaint charges that the husband Renfro, being indebted to the plaintiff in Oklahoma for more than $3,000 for money had and received, conveyed to his wife certain realty in that state, with the intent and purpose on his part, known and participated in by the wife, to defraud the plaintiff as his creditor; that the wife afterwards sold the Oklahoma realty and invested the proceeds in other lands and certain merchandise in Lane County. A. R. Renfro, the brother, is made a party because he has a mortgage for $4,000 given by the husband and wife upon the Lane County land, which the plaintiff alleges is fraudulent. Except as to the relationships of the defendants, the complaint is denied.

The defense principally relied upon is to the effect that prior to the commencement of the plaintiff's action in Oklahoma and while the husband and wife had no knowledge whatsoever of the claim on the part of the plaintiff against either of the defendants, the wife bought from the husband the Oklahoma realty

already mentioned, paying therefor a valuable consideration, and took conveyance from her husband, which was duly recorded prior to the commencement of the plaintiff's action, and that afterwards the wife paid off and extinguished the mortgage already upon the land when she bought it, sold the property and invested the proceeds in the Lane County lands and the merchandise mentioned, all in good faith, for a valuable consideration and without any knowledge or notice whatsoever of any claim on the part of the plaintiff. This new matter was traversed by the reply.

After the testimony was closed, the court reopened the case at the instance of the plaintiff, took additional testimony by deposition of witnesses in Oklahoma on behalf of the plaintiff and subsequently rendered a decree to the effect that the defendant husband is the owner of the Lane County land; that the wife holds title to it in fraud of the plaintiff and that the same should be subjected to an execution on plaintiff's Lane County judgment. The defendants appeal.

Reversed and Dismissed.

For appellants there was a brief over the names of *Mr. Lark Bilyeu* and *Messrs. Potter & Immel,* with oral arguments by *Mr. Bilyeu* and *Mr. E. O. Potter.*

For respondent there was a brief over the names of *Mr. J. M. Devers, Mr. J. S. Medley* and *Mr. Charles A. Hardy,* with an oral argument by *Mr. Devers.*

BURNETT, J.—The chronology of the events involved in this litigation is substantially this: The plaintiff claims that it bought certain alleged state warrants which afterwards proved to be forgeries; that the defendant husband acted as an intermediary

between the officer of the state who uttered the forged
paper, and the Guthrie National Bank, passing the
invalid warrants from the officer to the bank for the
account of the plaintiff.   This transaction took place
in the latter part of January, 1911.   The husband
suffered a stroke of paralysis on May 7, 1911, and
became unable to attend to his business.   The Okla-
homa land in question did not constitute the whole of
his possessions.   He had other realty at the time and
was engaged in a prosperous drug business at Guthrie,
Oklahoma.   It is claimed on the part of the defend-
ants that the husband was greatly worried about the
six thousand dollar mortgage on the land, and to re-
lieve him the wife paid him out of her own funds about
$5,000, and took title from him by deed of February 19,
1912.   There is evidence to the effect that a previous
deed had been made in December before but was in-
formal in some particulars, requiring the instrument
already mentioned as a means of correction.   The next
event was the departure of the husband and wife to
take up their residence in Oregon, in the latter part of
February, 1912.   Succeeding this, on March 8, 1912,
the plaintiff began the action against the husband,
the Guthrie National Bank and its cashier, to recover
as for money had and received to the use of the plain-
tiff.   Judgment was not rendered in that action until
April 27, 1915, more than three years after its com-
mencement.   Action upon the Oklahoma judgment
was begun in Lane County, Oregon, on November 13,
1915, resulting in a judgment against the husband on
March 3, 1916, as already stated.   Afterwards came
the instant suit.

There is a dispute in the testimony between the hus-
band and the cashier of the Guthrie bank, Sohlburg
by name, about who took the initiative in bringing

about the transaction concerning the warrants. Renfro testifies in substance that he was approached by Sohlburg, inquiring for warrants, while the latter contends that Renfro took up the subject with him. This is not necessarily material in the inquiry. It seems from the testimony that banks in Oklahoma were anxious to buy state warrants as an investment because they were not taxable. There is no testimony whatever tending to show that Renfro knew that the warrants in question were forged, and he is uncontradicted in his statement that the first he knew of any claim against him on account of his connection with the transaction was when Sohlburg sent him a copy of the papers served in the Oklahoma action.

As to the origin of the funds which the wife claims to have paid to her husband for his interest in the Oklahoma lands, we have only the testimony of the husband and wife. She states that she married her husband in 1891 and that he was then a prosperous druggist at Guthrie and had plenty of money. They both agree that at the beginning of their married life he gave her regularly $10 every month for her own use, independent of the expenses of the household. Soon afterwards he increased this to $50 per month. They also say that she invested her money and reinvested it and was frugal in her habits, so that at the time of the conveyance she had accumulated in the neighborhood of $5,000. He tells of giving her money at different times, among others, $300, being half of a $600 bet he won on an election. She narrates her purchase for $450 of some lots she afterwards sold for $2,100. They do not produce any books of account showing all these transactions, but there is nothing to contradict them in their positive statement.

1-4. The deposition of Sohlburg is to the effect that Renfro brought the bonds to the former's bank and that the check which the agent of the plaintiff gave in payment was carried to Renfro's account in the Guthrie bank. Renfro testifies substantially that he simply acted as messenger from the state official to the Guthrie National Bank; that in return for the warrants he received a cashier's check on that bank, whereupon he protested that it should not have been drawn in his name, as he was not selling them, but that Sohlburg put him off with the statement that the books had been made up, as the transaction had occurred after banking hours and that it would not make any difference, whereupon Renfro indorsed the check to the state official. The witnesses account for this being after banking hours by the fact that owing to the train schedule the officer could not arrive at Guthrie until evening. There is no testimony tending to show that Renfro knew that the warrants were invalid. Neither is there any evidence indicating that his wife knew of any claim of the plaintiff against him prior to the commencement of the action. It will be noted that all of the money which the wife had, in whatever manner she acquired it, was accumulated prior to the transaction concerning the warrants. The conveyance for which she paid was made before the commencement of the action and, so far as the testimony shows, was executed and delivered before the grantor therein had any notice of the plaintiff's claim against him. That the defendant's wife has a right to inquire into the origin and circumstances of the plaintiff's demand against her husband is taught in *Barnes* v. *Spencer,* 79 Or. 205 (153 Pac. 47). There, the defendant Spencer had acquired judgment against the husband of Mrs. Barnes in California, had sued

upon it in Oregon and recovered a domestic judgment
here.   He was attempting to levy an execution upon
property which Mrs. Barnes claimed was purchased
with her money by the husband, who took title in him-
self contrary to her instructions.   The court there
permitted her to inquire into the origin of the claim
of the judgment creditor.   This ruling depended upon
the principle that she was not bound by any judgment
to which she was not a party.   So here, Mrs. Renfro
is not concluded in this suit by the mere rendition
of a judgment in any court unless she was a party to
it.   She is entitled to put in evidence all the circum-
stances attendant upon the origin of the claim, not
only to show that her husband had no intent to de-
fraud his creditors, having no knowledge of any such
claim, but also that even if there were such a fraud-
ulent design on his part she knew nothing of it and
did not participate in the deceit.   There is nothing
against the claim of the husband and wife that she
paid him a valuable consideration for the property in
Oklahoma.   To a financially interested critic there
might be suspicion that she could not acquire $5,000
during the twenty years of her married life.   Mere
suspicion, however, is not enough to overthrow a posi-
tive statement which is not unreasonable.   It is fur-
ther suggested that there were no books of account
offered, nor any details given about the numerous
transactions which would lead to the accumulation of
that amount of money.   We must remember, how-
ever, that it is not improbable that a husband engaged
in prosperous  business should give his wife money
continually and systematically.   Neither is it beyond
belief that while they prospered and were harmonious
in their domestic life business was not transacted be-
tween them with that same punctilious accuracy that

would characterize dealings between strangers, both of whom were business men.

The legislative department of the government has codified the rules relating to conveyances with intent to defraud creditors. They are here set down:

Section 7397, L. O. L. "Every conveyance or assignment in writing or otherwise of any estate or interest in lands or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void."

Section 7400, L. O. L. "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law."

Section 7401, L. O. L. "The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

The opinion in *Garnier* v. *Wheeler,* 40 Or. 198 (66 Pac. 812), written by Mr. Justice MOORE, is authority for this principle:

"Three things * * must concur to protect the title of the purchaser: (1) He must buy without notice of the bad intent on the part of the vendor; (2) he must be a purchaser for a valuable consideration; and (3) he must have paid the purchase money before he had notice of the fraud."

And it is said by Mr. Justice BEAN in *Bond* v. *Ellison,* 80 Or. 634, 639 (157 Pac. 1103, 1104):

"In order to avoid a sale upon the ground of fraud, the vendee must have had notice of the vendor's fraudulent designs. Notice of the fraudulent intent of the vendor may be inferred from the circumstances; but the mere negligence or want of diligence in not inquiring into the facts known to him and calculated to put him upon inquiry is not sufficient to charge him with notice of fraud."

See, also, *Coffey* v. *Scott,* 66 Or. 465 (135 Pac. 88).

The testimony shows without dispute that when the husband gave money to his wife he had a right to give it, making it hers as against all the world, because it was given to her long before the transaction concerning the warrants was had or thought of. They explain the transfer of the property on the ground that the husband had suffered a stroke of paralysis and his tenure upon life at that time seemed to be precarious; that he was worried by that fact and the further circumstance that there was a mortgage of $6,000 upon the land; that to remove the worry and to dispose of the property so that she could handle it without being complicated with his estate in case of his death, the conveyance was made, and that all the while they were both entirely unaware of any claim on behalf of the plaintiff against the husband on any account. It is not improbable, much less impossible, that during her twenty years of married life, with a separate income of fifty dollars per month and her investments and reinvestments, the wife accumulated $5,000. That she paid this to her husband is not disputed by any testimony. It constitutes the valuable consideration mentioned in Section 7401, L. O. L. It is utterly uncontroverted that she had no notice whatever of any fraudulent intent on the part of her hus-

band and the testimony is clear that the latter had no such intent, because he was not aware of any claim against him on behalf of the plaintiff. The case made by the defendants conforms to the standard of testimony announced in *Garnier* v. *Wheeler,* 40 Or. 198 (66 Pac. 812). Moreover, it appears without dispute in the testimony that the husband had upwards of five thousand dollars' worth of other property, part of it realty, in the state of Oklahoma, independent of the transferred land, even if the latter were a pure gift. The plaintiff may have lost money in its endeavor to acquire nontaxable securities as an investment, and we cannot disturb the judgment which it has against the defendant husband, for the determinations of the courts of a sister state are entitled to full faith and credit here. But the evidence does not disclose anything to contradict the position of the wife that she paid a valuable consideration for the property without notice of any fraudulent intent on the part of her husband. We think that the plaintiff's showing is not sufficient under the rules laid down by our Code on the subject to sweep away the wife's accumulations of twenty years, in the interest of the plaintiff.

The decree is reversed and the suit dismissed.

REVERSED AND DISMISSED. REHEARING DENIED.

MCBRIDE, C. J., and BENSON and HARRIS, JJ., concur.