Argued October 27, affirmed November 25, 1953

# CLARK ET AL. *v.* COURTLAND LUMBER COMPANY ET AL.

## 264 P. 2d 439

648

*Charles R. Cater*, of La Grande, argued the cause and filed a brief for appellants.

*W. F. Brownton*, of La Grande, argued the cause and filed a brief for respondents.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK and TOOZE, Justices.

TOOZE, J.

This is a suit in equity in the nature of a creditors' bill, wherein Thomas L. Clark, Carl Scott, John Thomas Scott, John W. Hunter, and Mary Ann Hunter Wooten, a partnership, dba T. L. Clark Lumber Company, are plaintiffs, and Courtland Lumber Company, a corporation, A. Sherwood Nelson, F. E. Calder and Eunice Calder, husband and wife, are defendants, to subject to the payment of a debt alleged as owing to plaintiffs, an alleged equitable interest in personal property of defendant F. E. Calder. The trial court entered a decree in favor of defendants, and plaintiffs appeal.

The personal property involved in this suit consists of a lumber planing machine and attachments which defendant F. E. Calder purchased March 21, 1951, under a conditional sales contract, from Bader & Carroll, of Portland, Oregon.

The property is described as "1—Woods 404-B, 6 x 15—8 K planer and matcher W/T & B profiles—motorized side heads with belts & blower hoods, jointers and countershaft for planer and profiles". The

purchase price was $12,500, upon which the sum of $4,167.02 was paid in cash at the time of purchase. The contract provided that the balance of the purchase price should be paid in 12 equal successive monthly instalments of $736.08 each, the first payment to be made on April 21, 1951. It also was provided that title to said personal property should remain in the seller until full payment of the purchase price. On January 12, 1952, Calder owed a balance of approximately $4,500 on said purchase price and was in default.

Calder operated a lumber planing mill at Elgin, Oregon, under the name of "Elgin Pine Lumber Sales". Said mill was located upon real property owned by W. H. Culp and Myrtle Culp. The personal property above described, together with other miscellaneous tools and machinery owned by Calder, were located and used in said planing mill.

In the fall of 1951 and in January, 1952, Calder was experiencing financial difficulties. He was indebted to plaintiffs in a substantial sum of money, the exact amount of which was not known, as well as being heavily indebted to others. He endeavored to sell his planing mill, offering it to plaintiffs and to others. Plaintiffs declined to purchase. Late in 1951, defendant Calder opened negotiations with defendant Courtland Lumber Company, acting by and through its president, A. Sherwood Nelson, for the sale of the mill to that defendant.

In December, 1951, and in connection with its negotiations for the purchase of the planing mill, defendant Courtland Lumber Company made contact with Clyde P. Carroll of the firm of Bader & Carroll, with a view to purchasing the seller's interest in the planer. T. L. Clark, one of the plaintiffs, also attempted to purchase that interest. Early in January, 1952, Bader

& Carroll agreed to transfer their interest in the planer to Courtland Lumber Company upon payment of the balance of the purchase price owing on the conditional sales contract, with accrued interest. When assured of being able to acquire the interest of Bader & Carroll in the planer, defendant Courtland Lumber Company agreed to and did, on January 12, 1952, purchase the said planing mill and all the equipment therein contained from the said Calder for the sum of $16,500. Seven thousand eight hundred dollars of this purchase price represented the amount paid on account of Calder's interest in the personal property purchased from Bader & Carroll. At the same time (January 12, 1952) defendant Courtland Lumber Company entered into an agreement in writing with W. H. Culp and Myrtle Culp, his wife, for the purchase of the real property upon which the planing mill was located.

On January 12, 1952, Calder executed and delivered to Courtland Lumber Company a written assignment of all his right, title and interest in and to the conditional sales contract covering the planer purchased from Bader & Carroll. Also, on the same day, he executed and delivered to Courtland Lumber Company an additional written assignment of all his right, title and interest in and to a certain conditional sales contract covering a Hyster lumber carrier purchased from Southeast Equipment Company of Portland.

On or about January 12, 1952, defendant Courtland Lumber Company took possession of said planing mill and all the equipment therein contained and posted notices on said property to that effect. On January 22, 1952, Bader & Carroll by written assignment assigned all its right, title and interest in and to said conditional sales contract covering said planer, to Courtland Lumber Company.

On January 16, 1952, plaintiffs commenced an action at law against Calder for the recovery of money. A writ of attachment was issued, but no attachable property was found. That action was not prosecuted to judgment and was pending at the time of trial of the instant suit.

On January 24, 1952, plaintiffs filed their complaint in this suit. They alleged that the legal title to the said personal property at the time the writ of attachment was issued in the law action against Calder was vested in Bader & Carroll; they further alleged that on a date prior to the commencement of this suit the legal title was assigned and transferred by Bader & Carroll to Courtland Lumber Company. *There are no allegations in the complaint relative to the sale and transfer of Calder's equitable interest to the Courtland Lumber Company.* Plaintiffs explain their failure to make such allegations on the ground that they did not know of such transfer until the answer of defendants had been filed in this suit. Plaintiffs alleged that the sale from Bader & Carroll of the legal title to Courtland Lumber Company was made at the instance and request of Calder, who, they charge, was indebted to them, the plaintiffs, and that it was made for the secret use and benefit of Calder and for the purpose of evading his debts. They further alleged that Courtland Lumber Company and A. Sherwood Nelson accepted the assignment of the legal title knowing that it was made for the secret benefit of Calder and for the purpose of defrauding his creditors.

Defendants in their answer denied the material allegations of plaintiffs' complaint and affirmatively alleged that at the time of the issuance of the writ of attachment in the law action, they were the owners of the equitable interest of Calder in the planer which

they had prior thereto purchased from Calder for the sum of $7,800.

In their reply plaintiffs simply denied that Calder had, prior to January 16, 1952, assigned to Courtland Lumber Company for any consideration his right, title or interest in said conditional sales contract for the purchase of said planer. It is to be noted that plaintiffs' reply contains no allegation that the purchase by Courtland Lumber Company of the equitable interest of Calder in the contract and planer was fraudulent.

Two issues of fact were presented by the pleadings: first, was the sale by Bader & Carroll to Courtland Lumber Company of the legal title to the planer made for the secret benefit of Calder and in fraud of creditors?; second, did Calder at the time of issuance of the writ of attachment in the law action have an equitable interest in the planer that might be attached in this suit?

At the outset of the trial plaintiffs abandoned their claims upon the first issue and offered no evidence in support thereof. Upon the second issue, the trial court found against plaintiffs.

In deciding the issues, the able trial judge prepared and filed a written opinion in which he carefully and thoroughly discussed, analyzed, and weighed all the evidence in the case. Findings of fact and conclusions of law, in keeping with the written opinion, were entered of record. Upon this appeal, plaintiffs' principal complaint is that the trial court did not correctly evaluate the testimony in the case.

Plaintiffs in their brief state the issue on this appeal as follows:

"The question on this appeal is whether the burden of pleading and proof was upon the defendants and whether they have sustained that burden."

No contention is made that plaintiffs cannot maintain this suit because they have not reduced their money claim against Calder to judgment, although that contention was made by defendants in the trial court in support of their general demurrer to the complaint. The allegations of the complaint and the proof on trial are sufficient to establish the insolvency of Calder. The law in this state is well set forth in *Security S. & T. Co. v. Portland F. M. Co.,* 124 Or 276, 303, 261 P 432, where Chief Justice RAND, speaking for the court, said:

"\* \* \* It is a general rule, and the rule is applicable in this state, that where a creditor seeks to satisfy his debt out of some equitable estate of the defendant in the suit which is not liable to levy and sale under an execution at law, he must obtain a judgment and have the execution returned *nulla bona,* or, if the suit be one to set aside a fraudulent conveyance, he must at least have obtained the benefit of an attachment lien: Dawson v. Coffey, 12 Or. 513 (8 Pac. 838); [Citing additional cases]. The reason for the application of the rule is that in creditors' suits jurisdiction in equity will not be entertained where there is a remedy at law and hence, before the suit can be maintained, the creditor, as a general rule, must have exhausted his remedies at law. To this rule there are, however, well-recognized exceptions and one of the exceptions which this court has recognized is where the debtor is an insolvent corporation."

Plaintiffs' first assignment of error is:

"The trial court erred in holding that there had been a bona fide sale of the vendee's interest in the planer contract for an adequate consideration prior to the commencement of this suit and in denying relief to the Appellants and entering Decree in favor of Respondent."

In support of this assignment, plaintiffs contend that the evidence offered by defendants failed to prove the payment of an adequate or any consideration to Calder for the planer; and further that the reasonable inferences to be drawn from the evidence establish the fact that the assignment of Calder's interest in the planer to Courtland Lumber Company was not made on January 12, 1952, as claimed by defendants, but at a later date after the commencement of this suit, and with notice of plaintiffs' claim.

■ There were some conflicts in the testimony. Moreover, from the established facts, different inferences might reasonably be drawn. The inferences drawn by the trial judge were those consistent with good faith and fair dealing on the part of defendants. A careful consideration of the entire record convinces us that the trial court arrived at the correct solution of the facts. We are impressed by the painstaking analysis made by the trial judge of all the evidence in the case, as evinced by his written memorandum. The trial court found as facts:

"That F. E. Calder did on the 12th day of January, 1952, for the sum of $7,800.00 sell, assign, transfer, set over and deliver to the Courtland Lumber Company, a corporation, all of his right, title and interest in and to a conditional sales contract * * * and in and to the said planer and attachments. That said planer and attachments were delivered to the Courtland Lumber Company by the said F. E. Calder on the 12th day of January, 1952, * * *.

"That the said sale * * * of the said planer and attachments was a bona fide sale, without fraud, and was made for a valuable and adequate consideration. That no secret benefit was reserved to F. E. Calder in making the sale to the Courtland Lumber Company."

We have often said that where there are conflicts in the testimony in the trial of an equity suit, the findings of fact made by the trial judge are entitled to great weight. Although such are not binding upon us when trying the case de novo, as we do, nevertheless, it is an exceptional case indeed where we are willing to substitute our judgment as to wherein lies the truth upon disputed facts, for that of the trial judge who heard the witnesses testify. When all is said and done, we have only a cold record before us for evaluation.

However, plaintiffs argue that defendants had a burden of proof in this case that they did not meet.

They make the following point in their brief:

"In asserting its defense the defendant Courtland Lumber Company was obligated to *allege,* as well as prove, that it was an innocent purchaser; that it paid a valuable, adequate consideration and that it was paid before there was notice of the plaintiffs' outstanding equity, or the fraudulent intent of his grantor." (Italics ours.)

It will be remembered that in their complaint the plaintiffs made no allegation whatever respecting the transfer of Calder's interest in the planer to Courtland Lumber Company. They did not charge that such transfer was fraudulent, either in their complaint or in the reply. In their answer defendants simply alleged that on January 12, 1952, in consideration of the sum of $7,800 paid to him by Courtland Lumber Company, F. E. Calder did sell, assign, transfer, set over and deliver to that corporation all of his right, title and interest in and to the conditional sales contract and planer, and that said defendant took possession thereof on said 12th day of January.

■ No charge having been made in plaintiffs' complaint that the transfer of Calder's interest in the planer to Courtland Lumber Company was fraudulent, defendants were not required in their answer to affirmatively allege that they were bona fide purchasers without notice. The presumption is that they were. The defendants having alleged their purchase for a valuable consideration, if plaintiffs sought to attack the sale upon the ground of fraud, it was incumbent upon them to allege its fraudulent character in their reply. The only burden of proof resting upon defendants was to prove that they purchased Calder's interest on January 12, 1952, and paid a valuable consideration therefor, as alleged in their answer. This had been denied by the reply.

Defendants sustained by an abundance of satisfactory evidence. this burden of proof resting upon them.

To support their contention respecting the obligation of defendants to allege in their answer and prove that they were bona fide purchasers for value, and without notice of the equitable claim of plaintiffs, the plaintiffs cite a number of decisions of this court. They quote the following from the case of *Weber v. Rothchild*, 15 Or 385, 389, 15 P 650, 3 Am St Rep 162:

"* * * To constitute a good defense, facts · must be alleged showing that the purchaser paid a valuable consideration for the property; that at the time of the payment he had no notice of the outstanding equity, or, as in this case, of the fraudulent intent of his grantor, and that he acted in good faith."

The foregoing states the correct principle of law regarding pleading and proof which was applicable to the case then before the court. In her complaint the

plaintiff in that suit had specifically charged that the sale of the property in controversy to defendant was fraudulent. But where no such charge is made in a complaint, a defendant certainly is not required in his answer to make his good faith and freedom from fraud issues in the case. No one need assert his innocence until his good faith has first been attacked. Defendants alleged all the facts material to their defense. Had plaintiffs desired to attack the sale to defendants as being fraudulent, the opportunity to do so was presented when they filed their reply. Fraud was not an issue in this case insofar as the sale to defendants of Calder's interest is concerned. The rule intended to be announced in *Weber v. Rothchild,* supra, is clearly indicated by what we said as a prelude to quoting from that decision in *Moll v. Turnbow,* 155 Or 229, 239, 62 P2d 941:

"In Weber v. Rothchild, 15 Or. 385, 390 (15 P. 650, 3 Am. St. Rep. 162), this court, with reference to the necessary pleading and proof on behalf of a defendant *charged with participation in the fraudulent acts of a debtor,* observed: [Quoting]." (Italics ours.)

■ The rules of pleading and proof applicable are well stated by Mr. Justice McBRIDE in *Barr v. Minto,* 65 Or 522, 526, 133 P 639, as follows:

"It is true, as suggested by plaintiff's counsel, that a defendant in a suit of this character must plead and prove fraud on the part of the parties to the conveyance which they attack, but the same is true as to any party attacking a conveyance for fraud in any proceeding. A creditor attacking a conveyance for fraud must not only plead, but prove, the fraud. The same rules of pleading are required of a defendant who sets up fraud in a conveyance when he is sued by the grantee under

such conveyance to quiet title as would be required of him were he a plaintiff in a creditor's bill; and, having set up the facts thus necessary to be alleged, it is incumbent upon the plaintiff by way of reply to plead the same facts showing good faith, want of notice, and payment of consideration, as he would have been required to have shown had his conveyance been attacked by an original suit instead of by an answer.''

Plaintiffs point out in their brief what they designate as ''badges of fraud'', which they claim the record discloses as existing in connection with the dealings between Calder and his codefendants. Their argument with respect to those matters consists simply of their own evaluation of the evidence in the case. The trial court considered all the evidence to which attention is called, and its ultimate conclusions were against the plaintiffs' contentions. We refrain from discussing these alleged ''badges of fraud'' because, even if material under the issues as formed by the pleadings in this case, we are convinced from our own independent consideration of the evidence, and as the trial court found, that the dealings between Calder and his codefendants as to the matters in controversy here were in every way fair, regular, honest, and aboveboard.

The decree is affirmed.