WALKER *v.* WALKER & *a.*

66  390
72  571

Gifts and conveyances made by a husband for the purpose of defeating his wife's marital rights are invalid against her claim as his widow to her distributive share in his estate.

A husband has the power to dispose of his personal property in good faith, by gift or otherwise, during coverture, free from all *post mortem* claims thereon by his widow.

BILL IN EQUITY, by the widow of Nathaniel B. Walker, for her legal share in his estate. Nathaniel B. Walker died in January, 1889, leaving a will, in which he gave one third part of his estate to the plaintiff, and the remainder to his two sons by a former wife,—the defendants, Edward J. and Charles H. Walker. The defendant Mellen holds in trust for Edward J. and Charles H. Walker a large amount of corporate stocks and bonds, valued at over $38,000, delivered to him to be kept for them by Nathaniel B. Walker in his lifetime. The defendant Stevens is executor of the will.

The plaintiff married Nathaniel B. Walker in 1873. May 12, 1877, he purchased a house in Concord for $6,500, taking the deed in his name as trustee for his two sons, James and Charles. This house the plaintiff and her husband occupied as a homestead from that date until his death in January, 1889. It did not appear that anybody living knew how the title in this house stood until the day before the trial, when, the deed in the hands of the executor being called for by the plaintiff's counsel, the nature of the title was discovered. The house had been assigned to the plaintiff as dower and homestead out of her husband's real estate, she having waived the provisions made for her in his will.

Upon discovery of the state of the title to this house, the plaintiff moved to amend her bill so as to claim a share—one third part—of this estate. The court finding that at the time he took the deed, as trustee for his sons, the deceased had ample means remaining for a suitable provision for his wife, denied the motion, and the plaintiff excepted.

In 1883 jealousy had arisen between the plaintiff and her husband, and this feeling grew into an estrangement between them which continued until his death. In that year his two sons, Edward J. and Charles H., being then nineteen and seventeen years of age respectively, left home. About this time their father assigned to them certain shares of railroad stock, giving up his own certificates, and taking certificates some in the name of Charles and some in the name of Edward. He took powers of attorney from the boys to enable him to collect the dividends, but made no delivery or change of possession of the stock and bonds at that time, informing them, in a general way, without specifying the securities, that he had given

them (or proposed to give them) certain property of that kind, without specifying the amount. Mr. Walker retained the possession of this property, collecting the interest upon the bonds and the dividends upon the stocks, as upon his own property, sending Charles and Edward certain sums, as their needs required, and using the balance for his own personal and other expenses, until about the first of November, 1887, when he went to Worcester, and at Mellen's office delivered to him a tin box containing bonds and certificates, and requested Mellen to keep it for his sons, Charles and Edward, saying that the securities belonged to them, Charles and Edward, and that he had powers of attorney from them to manage the property and collect the income. Mellen told him he would take the securities and hold them as he might direct. Mellen found in the box a large amount of corporate stocks and bonds, with two lists written upon a small piece of paper, enumerating the property,—one list having the name "Charles H. Walker" written over it, and the other the name of "Edward J. Walker." These names were in N. B. Walker's handwriting. These stocks and bonds have since remained in Mellen's possession, except that certain other stocks or bonds were added by Mr. Walker in his lifetime for the purpose of making the lists more nearly even in amount, and an exchange of one lot was at one time made by him. Mellen collected the interest on the bonds and the dividends upon the stocks. Some of the income collected by him he paid to Charles and some to Edward, either with or without express directions from their father, and sent him the balance, always accounting to their father, N. B. Walker, for all collections and payments. Mr. Walker died in January, 1889. Charles and James E. did not know the amount or kind of these securities until after their father's death.

The value of the whole, on the first day of April, 1890, was $37,737. No part of this property was ever delivered to Charles or Edward in the lifetime of Mr. Walker, their father. In the management and control of the property Mr. Mellen acted entirely under the advice and direction of Mr. Walker, who did not intend that the gift to his sons should take effect until his death.

Without the property claimed to be embraced in the gift to the sons and her interest in the homestead premises lost as before stated, the value of the plaintiff's entire right in the estate of over $50,000 left by her husband is only $2,211.97.

The court found that the gift to the sons by the deceased was testamentary in its character, designed to deprive his wife, the plaintiff, of her rightful share in his estate, and as to her was fraudulent and void, and that the plaintiff was entitled to a decree; that Charles and Edward Walker, or said Mellen for them, should pay to the plaintiff the sum of $12,579, being one third of the value of the property in Mellen's hands claimed by Charles and

Edward, and interest on said sum from April 1, 1890; or that said Mellen deliver all of said property to said Stevens, to be administered as part of the estate of said Walker. The defendants excepted.

*Chase & Streeter*, for the plaintiff.

*W. L. Foster*, for the defendants.

BLODGETT, J. Upon the facts found at the hearing the bill can be maintained. The attempt of the plaintiff's husband to dispose of nearly all of his personal estate so that he should have the enjoyment and control of it for life and the plaintiff be deprived of any portion of it at his decease, cannot be sanctioned. It is settled law, that conveyances of real estate made by the husband during the coverture for the purpose of defeating the wife's rights, are, as to her, fraudulent and void. Whether the same rule obtains in transfers of personal property for the like purpose when the husband reserves therein no right to himself, is a question upon which the authorities are somewhat at variance; but where the transfer is a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share, there is no substantial conflict of authority that the rule applicable to conveyances of realty prevails. *Thayer* v. *Thayer*, 14 Vt. 107—39 Am. Dec. 211; *Hays* v. *Henry*, 1 Md. Ch. 337; *Rabbitt* v. *Gaither*, 67 Md. 95, 100, 105; *Littleton* v. *Littleton*, 1 Dev. & Bat. 327; *McGee* v. *McGee*, 4 Ired. 105; *Davis* v. *Davis*, 5 Mo. 183; *Stone* v. *Stone*, 18 Mo. 389; *Tucker* v. *Tucker*, 29 Mo. 350; *Smith* v. *Smith*, 12 Cal. 216, 225; *Lord* v. *Hough*, 43 Cal. 581; *Cranson* v. *Cranson*, 4 Mich. 230; *Holmes* v. *Holmes*, 3 Paige 363; *Richards* v. *Richards*, 11 Humph. 429; *Petty* v. *Petty*, 4 B. Mon. 215.

Such, also, were the decisions under the ancient custom of London, from which our statute of distributions is said to have been borrowed. Thus, in *Hall* v. *Hall*, 2 Vern. 277, it was held that if a freeman gives away goods in his lifetime, and yet retains the deed of gift in his own power, or retains the possession of the goods or any part of them, it is a fraud upon the custom, and will not conclude the widow; and in *Fairebeard* v. *Bowers*, 2 Vern. 202, a voluntary judgment by a freeman, payable after his death, was postponed to the widow's claim for her customary share. So, in *City* v. *City*, 2 Lev. 130, where the deceased had by deed assigned a term to his son, and the son had gone into possession, it was held that this did not bar the widow of her customary share, the assignment being without consideration; and it was said "the same is the law as to goods." And *Edmundson* v. *Cox*, 7 Vin. Abr. 203, is of the like general purport. That case was a bill by

the widow of a freeman of London for her customary share. The husband had made his will and devised to the wife certain real and personal estate. There was, sealed up in the will, the bond of the testator, executed before the date of the will, conditioned to pay the defendant a given sum of money, or transfer to him a given amount of bank stock. The obligee was the testator's nephew, and the bond without valuable consideration. It was held by the master of the rolls that the widow, on first disclaiming all benefit under the will, could have a decree for her customary share, and that the bond should not stand in her way; and he adds, "Such sort of contrivances to evade the custom have always been set aside in this court." See, also, *Smith* v. *Fellows*, 2 Atk. 62, and *Coomes* v. *Elling*, 3 Atk. 676. These decisions well illustrate what should be the course of decision under our statute. The widow's claim for her share under the statute being strictly analogous to the claim of the widow of a freeman under the custom of London, if a contrivance to evade the rights of the widow under that custom was never tolerated, there is no reason why it should meet with more favor under the statute.

By the declaratory statute of 13 Elizabeth, *c.* 5, made perpetual by 29 Elizabeth, *c.* 5, and adopted as part of the common law in this state, for avoiding feigned, covinous, and fraudulent feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments, and executions, as well of lands, tenements, and hereditaments as of goods, chattels, wares, and merchandise, which feoffments, etc., have been devised of malice, fraud, covin, collusion, or guile, to the end, purpose, and intent to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, etc., not only to the let or hindrance of the due course and execution of law and justice, but also to the overthrow of all true and plain dealing, etc., it was declared and enacted in the second section. " that all and every feoffment, gift, grant, alienation, and conveyance, and all and every bond, suit, judgment, and execution, to or for any intent or purpose before declared and expressed, shall be from henceforth deemed and taken," as against such creditors and others and their representatives, "to be utterly void and of none effect."

There is no ground to claim, and no claim is made by the defendants, that the act of the plaintiff's husband in relation to the stocks and bonds comes within the proviso in the sixth section, exempting from the operation of the act transactions upon a good consideration and *bona fide*; but it is contended that the plaintiff is not within the act as a creditor, and therefore is not within its protection. Technically, and in a strict legal sense, she may not perhaps be a creditor; but "the statute by the words 'creditors and others' embraces others than those who are strictly and technically creditors. Even the word 'creditor' does not receive a strict definition, for a party who is not strictly speaking a creditor

may stand in the equity of a creditor, and have an interest that may be defrauded. . . . The character of the claim, if it is just and lawful, is immaterial . . . and a contingent claim is as fully protected as one that is absolute." Bump Fr. Conv. (2 ed.) 491, 492. Under this construction of the statute, which is fully supported by the decisions, it is not open to reasonable doubt that the plaintiff comes within its protection. The character of her claim is just and lawful in the highest degree; she stands in the equity, if not in the attitude, of a creditor; she is as much injured as any creditor can be; and the fact that at the time the securities were transferred her distributive right therein was contingent, entitles it none the less to protection than if it had been absolute. And this should be so. Marriage is equivalent to a pecuniary consideration; that is to say, it is a valuable consideration. The plaintiff's right to her distributory share of her husband's large estate, and which is quite likely to have been one of the inducements to her marriage with him, is therefore in the nature of an actual purchase of that right, and may well be given the same effect under the liberal and beneficial construction which the statute is entitled to receive for the suppression of fraud, the advancement of justice, and the promotion of the public good.

But however this may be, inasmuch as the design of the statute obviously was to embrace others than those who are creditors in a strict and technical sense, we think that under its designation of "creditors and others" the plaintiff is fairly included; "and if," in the language of *Mason,* J., in *Feigley* v. *Feigley,* 7 Md. 537 (61 Am. Dec. 375), "under such a comprehensive clause as 'creditors and others,' a wife who has been made the victim of her husband's fraud is not to be included, we are at a loss to ascertain to whom it was designed to relate." The same or equivalent statutory language is also held to apply to and include the defrauded wife, in *Tyler* v. *Tyler,* 126 Ill. 525 (9 Am. St. Rep. 642), *Green* v. *Adams,* 59 Vt. 602 (59 Am. Rep. 761), *Jiggitts* v. *Jiggitts,* 40 Miss. 718, *Reynolds* v. *Vance,* 1 Heisk. 344, *Boils* v. *Boils,* 1 Coldw. 287, *Brewer* v. *Connell,* 11 Humph. 500, *Killinger* v. *Reidenhauer,* 6 S. & R. 531, *Bouslough* v. *Bouslough,* 68 Pa. St. 495, 499, and *Johnson* v. *Johnson,* 12 Ky. 485. And if it were even held that the statute does not include the plaintiff, either as a creditor or as one to whom the conveyancer owes a lawful duty in respect of his property which he fraudulently attempts to avoid, it would not leave her remediless under the common law, which is still in force. "As the act is merely declaratory, resort may always be had to the principles of the common law whenever the statute fails to reach a case of fraud. The act itself is not affected by this doctrine, and will in general be received as a true declaration of what the law was; but wherever the statute is ineffective, either through a change of custom, or the introduction of a new kind of property, or the concoction of some new device, there the common law inter-

venes with its pure and elevated principles of morality and justice, and enforces the dictates of common honesty and common sense." Bump Fr. Conv. 11.

But irrespective of the statute and the common law, the obligations and duties of husbands and wives to each other disable each of them alike successfully to defraud the other by such a disproportionate, unreasonable, and fraudulent transfer of property as appears in this case (*Laton* v. *Balcom*, 64 N. H. 92, 94–96); and upon general principles of equity alone the plaintiff's bill may be supported. It is an established rule, that a husband will, upon a proper case being made out, be restrained by injunction from transferring property in fraud of the legal or equitable rights of the wife (2 Sto. Eq. Jur. (12th ed.) *s.* 955, Kerr Inj. (2d ed.) 534, and cases cited, Eden Inj. 295, 296); and if such transfers are made, equity puts her on the same footing with a creditor who finds himself hindered, delayed, or defrauded by his debtor.

With these views of the transaction, the plaintiff is entitled to her distributive share of the stocks and bonds, as if no transfer of them had been made or attempted. If, however, the transfer was not fraudulent as against her, the same conclusion follows. The gift was not perfected. It was not valid as a gift *inter vivos*, for that goes into absolute and immediate effect, the donor parting not only with the possession, but with the dominion of the property; nor as a *donatio causa mortis*, for the securities were not delivered by the deceased in his last sickness, nor when in any particular peril of death, or under any special apprehension of such peril. *Craig* v. *Kittredge*, 46 N. H. 57, and authorities cited.

As to the house occupied by the plaintiff and her husband as a homestead, a different case is presented. At the hearing, the plaintiff moved to amend her bill so as to claim one third part of the homestead premises; but the claim was denied on the ground that at the time her husband took the homestead deed as trustee for his sons, he had ample means remaining for a suitable provision for the plaintiff,—to which denial she excepted.

If the purpose which prompted the husband's act was not to defraud the plaintiff, but a desire to make a reasonable provision for his minor children, whose interests it was his duty to guard and protect, it would be a misnomer to call the transaction fraudulent, and it must be allowed to stand. In such cases the facts are always open to inquiry, " and it seems settled that the court is warranted in considering such circumstances as the meritorious object of the conveyance, and the situation of the husband in point of pecuniary means." Sch. Dom. Rel. 270. And this is right and reasonable. Marriage does not debar a man from all right to dispose of his property during his life according to his will and pleasure. On the contrary, " nothing is better settled than the power of a husband to dispose of his personal property in good faith, by gift or otherwise, during coverture, free from all *post-*

*mortem* claims thereon by his widow." *Dickerson's Appeal,* 115 Pa. St. 198—*S. C.,* 2 Am. St. Rep. 547, 552. It simply debars him from making gifts and conveyances with the view of defeating his wife's marital rights, and to this extent only is his power of disposal clogged and fettered. When his object is not to defraud her, he may therefore lawfully sell or convey, and he may even make a gift of his property for any lawful purpose. If possessed of large estate, the voluntary conveyance of a small portion of it to a stranger would scarcely be deemed fraudulent as against her; and if the conveyance is to his children by a former marriage, and he retained that which would, in the ordinary course of events, be ample provision for himself and wife and family, there surely would be no fraud upon her marital rights cognizable in equity. See *Butler* v. *Butler,* 21 Kan. 521 (30 Am. Rep. 441, 446), and authorities generally.

Taking into consideration Mr. Walker's pecuniary circumstances, the comparatively small amount invested in the homestead trust estate with reference to the entire amount of his property, the meritorious claims of his children, as such, upon him, and the pregnant fact that this trust was created long before his estrangement from the plaintiff, we are of opinion that the provision made by him for his children was, under the existing circumstances, a just and reasonable one, that no fraud upon the plaintiff was intended, and that her claim for a share of the homestead estate was properly denied.

*Exceptions overruled.*

DOE, C. J., and ALLEN, J., did not sit: the others concurred.