Argued at Pendleton October 28, affirmed December 2, 1919.

## BOSMA *v.* HARDER.

(185 Pac. 741.)

**Husband and Wife—Fund Accumulated During Marriage Separate
Property of Husband.**

1. Where fund was accumulated in Oregon and was in possession
of husband, who, when he and his wife moved to Idaho, deposited it
there in his own name and husband subsequently withdrew it from
the Idaho bank and placed it in possession of a brother in Oregon,
*held* that the fund remained the separate property of the husband, in
view of Section 799, subdivisions 4, 11, 12, 19, and Sections 7034,
7044, 7045, 7050, L. O. L.

**Evidence—Declaration of Deceased.**

2. Declaration of deceased husband when he transferred money
in the shape of a certificate of deposit in the Idaho bank that it was
his own money was admissible.

**Husband and Wife—Separate Property Taken to Community Prop-
erty State.**

3. Separate property, acquired in a state where community prop-
erty is unknown, does not become community property, but remains
separate property when transported into a community property state.

   [As to the effect of removal into community property state on
   separate property rights theretofore acquired, see notes in 13 **Ann.
   Cas.** 840.]

   [As to the law governing the community property rights of
   wife, see note in 85 **Am. St. Rep.** 564.]

**Husband and Wife—Gift of Separate Property of Husband Valid
Against Wife.**

4. Where fund was accumulated in Oregon and was in possession
of husband, who when he and his wife moved to Idaho deposited it
there in his own name, and husband subsequently withdrew it from
the Idaho bank, and of his own accord gave it to his brothers in Ore-
gon, *held* gift was valid against wife.

**Husband and Wife—Gift of Community Property by Husband Valid.**

5. Under Revised Codes of Idaho, Section 2686, providing that hus-
band has management and control of community property with like

absolute power of disposition as he has of his separate estate, except as regards homestead or community property occupied as a residence, an absolute unrestricted gift by a husband to his brothers of money is valid against wife though the money be treated as community property.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

The substance of the plaintiff's complaint is that in 1909, while she and her then husband, Charles Harder, were residing in the State of Idaho they had some domestic trouble in consequence of which she was preparing to institute a suit against him for a divorce, together with separate maintenance and alimony out of his property. Pending this, all of which was within the knowledge of both Charles Harder and his brother, the defendant herein, her husband procured from the First National Bank of Caldwell, Idaho, a draft on the First National Bank of Portland, Oregon, for $10,713, paying for the same out of money deposited in the Caldwell bank and which belonged to her and him as community property under the laws of Idaho, and in pursuance of a conspiracy between himself and the defendant, took it to Portland, Oregon, cashed it and transferred the proceeds to another bank under an assumed name, where he placed it to the credit of a bank at Haines, Oregon, owned exclusively by the defendant, by means of which it afterwards came into the possession and custody of the defendant, all with the intent to conceal the property, to prevent the plaintiff from obtaining alimony and maintenance out of the same and to defraud her out of the same. She charges also that the money was put into the possession of the defendant for the trust and benefit of her husband, to be delivered to the latter at his request and demand, and that the defendant still holds the same in such

trust for the benefit of Charles Harder, his heirs and legal representatives.

She further says that her husband died intestate at Boise, Idaho, October 20, 1910, being at the time a resident of that state and having therein an estate consisting of both real and personal property, leaving no children surviving him, and that she herself was the sole and only heir at law. By appropriate allegations she sets forth a history of the proceedings in probate whereby she, as administratrix, settled the estate of her husband and obtained a decree of the probate court in Idaho awarding her all the estate of her husband, in whatever form the same then was remaining after the settlement of claims against the estate. She alleges that under the laws of that state she was entitled, as the heir of her husband, to all of the community property and to the residue of his estate remaining after the liquidation of claims against the same. She says also that prior to his death, she and her husband became fully reconciled; that no proceedings in divorce were ever instituted by either against the other and that she did not learn of the disposition of the money already mentioned until after his death.

Her prayer in substance is that the defendant be declared to be a trustee for her benefit and that she have judgment against him for the money, together with interest from June 7, 1909, that being the date when he came into possession of the money.

The answer denies all fraud and conspiracy, challenges the allegation that the money involved was community property, traverses her allegation that she was the sole heir, because the parents of her husband were still living at the time of her husband's death, denies the wrongful holding of the money by the defendant as alleged in the complaint, and generally puts at issue

the allegations whereby the plaintiff seeks to charge the defendant with responsibility for the money or any part thereof.

Affirmatively, the answer avers in substance that on December 25, 1909, Charles Harder was the owner in his own right in severalty of the money in dispute, all of which had been accumulated in the State of Oregon prior to the removal of himself and the plaintiff to the State of Idaho, and that on the date last mentioned, in the State of Oregon, he gave the entire sum of $10,937 and the actual possession thereof to the defendant and three other brothers of Charles Harder, in equal parts, which gift they then and there accepted and took into possession and have ever since held and do now retain the title and possession thereof as their own. The answer charges that when Charles Harder so gave the money to his brothers he was and had for some time prior thereto been suffering from a mortal ailment from which he did not expect to recover, and did not recover, and which subsequently caused his death, and that on account of the fact that his then wife, the plaintiff herein, had for a long time theretofore been, and was then, grossly misconducting herself and brazenly misbehaving, he gave the money to his brothers with the intent then and there to part forever with all his right, title and interest therein. This pleading also avers that at the time of the gift the community property in the name of Charles Harder in the State of Idaho was of the actual value of $8,000 and pleads the statute of Idaho on the subject of community property, to the effect that when a decedent dies intestate and leaves a surviving husband or wife and no issue, the whole of the community property descends to the surviving husband or wife; that prior to the death of either thereof both the husband and wife own an equal,

undivided one-half interest in the community property, and that finally:

"The husband has the management and control of the community property with the like absolute power of disposition (other than testamentary) as he has of his separate estate": Rev. Codes, Idaho, § 2686.

This pleading also states that Charles Harder died intestate and without issue, in Idaho, on October 20, 1910, and that pursuant to his directions when he made the gift of the money as stated, the whole sum thereof was equally divided and distributed among his said four brothers, long prior to the commencement of this suit. All this matter is pleaded in bar, and likewise the pleader separately stating the same draws the conclusion that there is a defect of parties defendant, in that the other three brothers are not included as defendants.

A third defense is that prior to the death of Charles Harder, the plaintiff had full knowledge of the fact that the money had been withdrawn from the First National Bank at Caldwell, Idaho, and delivered into the possession of the defendant, and that knowing all this at the time of issuance of letters of administration upon the estate of her deceased husband, she neglected to institute proceedings for the recovery of the money until some witnesses named in the pleading died, whereby the defendant has been deprived of their testimony to his injury; and at no time prior to the death of the witnesses did the defendant have any intimation that the plaintiff intended to claim any part of this money, or of any facts that could have put him on inquiry concerning such an intent.

The reply traverses the answer in material particulars.

The suit was tried before the Circuit Court of Baker County and findings and decree in favor of the defendant, dismissing the suit, resulted. The plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. McCulloch & Wood* and *Messrs. Jackson & Walters,* with an oral argument by *Mr. W. W. Wood.*

For respondent there was a brief over the names of *Mr. J. H. Nichols, Mr. J. L. Rand* and *Messrs. Smith & Smith,* with oral arguments by *Mr. Nichols* and *Mr. Wm. Smith.*

BURNETT, J.—The plaintiff and Charles Harder were married in Oregon in 1893. The testimony of the latter's brothers, who were familiar at that time with his holdings, is to the effect that he had property at time of his marriage of the value of $7,000. The testimony of the plaintiff is the only evidence tending to dispute this. She and her husband, Charles Harder, lived at various places in the State of Oregon and finally, in 1907, they removed to Idaho and resided there until his death in 1910. He had taken with him to Idaho $18,000 and deposited it in his own name in the First National Bank of Caldwell in that state. He invested about $8,000 of this money in realty in Idaho, which he owned at the time of his death. It appears that the married pair had domestic trouble and the plaintiff sued her husband for divorce in the courts of Idaho. About that time Charles Harder, with the funds on deposit in the First National Bank of Caldwell, bought a draft on the First National Bank of Portland, Oregon, in the sum of $10,713, which he took with him en route to Portland by train. On the way,

he communicated with his brother, the defendant, who was then engaged in banking at Haines in Baker County, asking the latter to meet him as he passed that place. In pursuance of this invitation, the defendant accompanied Charles Harder on the train to La Grande. While thus together, Charles Harder told the defendant that he was having trouble with his wife, the plaintiff; that she was very much infatuated, and was maintaining illicit relations, with one Hardenburg; that he was afraid the latter would kill him, and that he was determined to put the money in question beyond the reach of the plaintiff. He also told the defendant at the time that he, Charles, was on his way to Portland, where he would deposit money to the credit of the bank at Haines of which the defendant was then the proprietor, and for the defendant to take it, manage the fund and pay him such interest as he could afford. To this the defendant agreed. Charles continued his journey to Portland, parting from the defendant at La Grande. Arriving in Portland, he cashed the draft, withdrawing the amount in money, which he took to the Ladd & Tilton Bank and, adding thereto $40, deposited the whole sum under the name of John Wilson to the credit of the Haines bank, and sent to his brother, the defendant, at Haines, the certificate of deposit. The defendant took charge of the fund, carried it to his individual account in the bank at Haines and allowed his brother Charles 4 per cent interest on the same. He used it until November 9, 1909, and on account of having more money than he could profitably employ at the time, he deposited it at his brother's direction in the First National Bank of Caldwell, Idaho, and took therefor a six months' time certificate of deposit drawing 5 per cent interest. The defendant retained this certificate of deposit, the face

of which amounted to $10,937, until December 24th of that year. At that time Charles Harder had written the defendant asking him to join with him in a Christmas visit to their parents at Milton, Oregon. In pursuance of the arrangement, Charles Harder came to Haines and while there inquired of the defendant the condition of the fund. Thereupon the defendant indorsed the certificate of deposit in blank and gave it to Charles Harder, who took it with him to Milton. In a conference between himself and three of his brothers, including the defendant, in the evening of Christmas Day, 1909, Charles Harder told them of the misconduct of his wife with Hardenberg and of his fear of his life at their hands, and stated to them that the money in question was his own, that he did not want his wife to have any of it in case of his death and that he gave to them and another brother not then present the money. He took the draft from his pocket and handed it to one of the brothers, not the defendant, who examined it and passed it to the third brother. The latter offered to return it to Charles Harder, but the latter refused it and told him to return it to the defendant, to be held for the four brothers.

The next evening Charles and the defendant visited the fourth brother, where Charles repeated in substance the same statement about his wife and the gift of the money to the quartette of brothers. The four brothers, give a very circumstantial account of this transaction. They state that Charles Harder never afterwards claimed or asserted any act of ownership or control over the money, and that the certificate of deposit remained in the possession of the defendant until maturity, when it was cashed and later on the proceeds were divided equally among the four brothers, long prior to the commencement of this suit.

It appears in testimony that the plaintiff married Hardenberg, later divorced him and married a man named Richardson, who was killed by Hardenberg, and that after the commencement of this suit she married Bosma, by which name she prosecutes the litigation.

1. In reality, the only substantial dispute on the facts is whether or not the money was indeed community property within the meaning of the laws of Idaho. The fund was accumulated in the State of Oregon and was in the possession of Charles Harder. He exercised acts of ownership over it by taking it to Caldwell and depositing it there in the bank in his own name. He further exercised authority over it as owner by withdrawing it from the bank and taking it to Portland and afterwards placing it in the possession of his brother. It is presumed, among other things, "that things in the possession of a person are owned by him; * * that a person is owner of property by exercising acts of ownership over it or by common reputation of his ownership," and "that private transactions have been fair and regular": Section 799, subds. 11, 12, 19, L. O. L.

2. When he transferred the money in its then shape of the certificate of deposit in the Idaho bank, the decedent declared that it was his own money, and this declaration was admissible in evidence under the authority of *Bartel* v. *Lope,* 6 Or. 321, and *Noblitt* v. *Durbin,* 41 Or. 555 (69 Pac. 685). *Prima facie,* then, the money belonged to and was the property of Charles Harder. It is true, the plaintiff says that the money was accumulated during the time they lived together as husband and wife and that, among other things, she cooked for harvest hands. This, however, does not establish her ownership in any part of the fund. The whole theory of the Oregon system of jurisprudence

is adverse to community property. It is entirely in favor of the separate property of husband and wife. In property matters they stand utterly apart except as to the *post-mortem* estates of dower and curtesy and such personal property interests as arise through the statutes of distribution and descents.

"When property is owned by either husband or wife, the other has no interest therein which can be the subject of contract between them, or such interest as will make the same liable for the contracts or liabilities of either the husband or wife who is not the owner of the property, except as provided in this act": Section 7034, L. O. L.

"The property and pecuniary rights of every married woman at the time of her marriage or afterwards acquired, shall not be subject to the debts or contracts of her husband and she may manage, sell, convey or devise the same by will, to the same extent and in the same manner that her husband can property belonging to him": Section 7044, L. O. L.

"The property, either real or personal, acquired by any married woman during coverture by her own labor, shall not be liable for the debts, contracts or liabilities of her husband, but shall in all respects be subject to the same exemptions and liabilities as property owned at the time of her marriage or afterwards acquired by gift, devise or inheritance": Section 7045, L. O. L.

"All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband are hereby repealed. * * And for any unjust usurpation of her property or natural rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has": Section 7050, L. O. L.

"It is presumed that a person takes ordinary care of his own concerns": Section 799, subd. 4, L. O. L.

3. Thus equipped with independent authority over her own earnings, we may safely presume that the plaintiff took ordinary care to reduce to possession what she had acquired by her own efforts as a separate contracting individual. From all the presumptions mentioned, and the circumstances disclosed by the evidence, we are impelled to the conclusion that the money which Charles Harder took to Idaho, and of which the fund in question was a part, was his separate property. Under such circumstances the law is that separate property acquired in a state where community property is unknown, does not become community property, but remains separate property, when transported into a community property state: *In re Nicoll's Estate,* 164 Cal. 368 (129 Pac. 278); *Meyers* v. *Albert,* 76 Wash. 218 (135 Pac. 1003); *Kraemer* v. *Kraemer,* 52 Cal. 302; *Douglas* v. *Douglas,* 22 Idaho, 336 (125 Pac. 796).

In a note on page 220 of the first American edition of Kerr on Fraud and Mistake, is found this language:

"There can be no doubt of the power of a husband to dispose absolutely of his property during his life independently of the concurrence, and exonerated from any claim of his wife, provided the transaction is not merely colorable and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition by the husband be *bona fide,* and no right is reserved to him, though made to defeat the right of the wife, it will be good against her: *Dunnock* v. *Dunnock,* 3 Md. Ch. 140; *Cameron* v. *Cameron,* 10 Smedes & Mar. (Miss.) 394 (48 Am. Dec. 759); *Lightfoot* v. *Colgin,* 5 Munf. (Va.) 42; *Stewart* v. *Stewart,* 5 Conn. 317; *Holmes* v. *Holmes,* 3 Paige (N. Y.), 363."

This excerpt is quoted with approval in *Small* v. *Small,* 56 Kan. 1 (42 Pac. 323, 54 Am. St. Rep. 581, 30 L. R. A. 243). The same doctrine is recognized in

*Leonard* v. *Leonard,* 181 Mass. 458 (63 N. E. 1068, 92 Am. St. Rep. 426), cited in the plaintiff's brief. The teaching of that case is that actual transfers of both realty and personalty by the husband are to be upheld as against his widow, but not when they are merely colorable. The same distinction is observed in *Walker* v. *Walker,* 66 N. H. 390 (31 Atl. 14, 49 Am. St. Rep. 616, 27 L. R. A. 799), where it is held, in the words of the syllabus, that:

"A husband has power to dispose of his personal property in good faith, by gift or otherwise, during coverture, free from all *post-mortem* claims thereon by his widow."

But that:

"A transfer of personal property, which is a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share of his estate, is fraudulent and void as to her."

Neither is the case like that of *Weber* v. *Rothchild,* 15 Or. 385 (15 Pac. 650, 3 Am. St. Rep. 162). There, Weber's wife sued him for a divorce. He had transferred property to Rothchild for a greatly inadequate price, with the understanding that he should enjoy a benefit from it and be entitled to a reconveyance of the same on payment of a certain amount of money. This was held void as against the wife in her suit for divorce, because it was in fraud of her as a *quasi* creditor. Likewise, in *Barrett* v. *Barrett,* 5 Or. 411, it was held that the wife when suing for a divorce has a standing as such a creditor from the time the suit was begun, to inquire into the validity of a conveyance made by the husband at any time after the cause of suit arose. In that instance the husband, fearing the ad-

verse consequences of a suit which his wife had insti-
tuted against him, conveyed the property in question
to his daughter, and it was held that the wife's stand-
ing as a litigant gave sanction to her inquiry into the
validity of the transaction. In *Griffith* v. *Griffith*, 74
Or. 225 (145 Pac. 270), the husband on separation
from his wife had bought some land with his own funds
and directed the conveyance to be made to a brother,
to be held by the latter for the benefit of the husband.
He died during the pendency of the divorce suit, after
which the wife, the suit having been abated, took out
letters of administration and sued as such represent-
ative, as well as in her own name, to set aside the con-
veyance and subject the property to her control as
administratrix in the settlement of his estate. There,
the property actually belonged to the estate of the hus-
band and it was proper that his personal represent-
ative should institute the suit for its recovery. The
case did not depend upon the fraud on the marital
rights of the wife.

In all these Oregon cases the husband was really the
owner of the property in equity, while in the instant
litigation the evidence shows without dispute that he
parted with the title to the money beyond recall.

In *Jones* v. *Summerville,* 78 Miss. 269 (28 South.
940, 86 Am. St. Rep. 627), it was held that—

"Fraud on marital rights cannot be predicated of a
voluntary conveyance by either husband or wife made
to prevent the other from inheriting."

In other words, if the property in question in very
truth remains that of the donor or grantor and the
transfer is made simply to cover it up for his benefit,
and to conceal it from his wife as a claimant, it is
really his and is subject to money demands his wife

lawfully may have upon it. On the other hand, it is an attribute of ownership of property that the owner may dispose of it as he will, and the transaction must stand because it is a lawful exercise of his authority over his own. It is analogous to the right of testamentary disposition of property and, if the title actually passes so that there remains no control over it on behalf of the donor or grantor, it is conclusive as against all other claimants.

4. The divorce proceedings mentioned may be laid out of the case, because it is in evidence that they were discontinued and the married pair had resumed matrimonial relations. The case then stands as if those relations had never been interrupted, and the transaction must be determined accordingly. If she had continued her proceedings to a successful conclusion entailing a money decree against her husband, and the money had remained in the custody of the defendant under the first arrangement, which was concededly for the benefit of Charles Harder and by which he did not intend to part with the property, the doctrine of the plaintiff's citations might have attached. But the evidence is clear, beyond dispute, that the defendant returned to Charles Harder on December 24, 1909, the certificate of deposit representing the entire fund with its accumulations. It was restored to its actual owner and placed in his custody. At that time Charles Harder and the plaintiff were living together as man and wife and the divorce proceedings had been discontinued. It was his property to do with as he chose, and there is no contradiction of the testimony of the four brothers that of his own accord, as a free gift to them, he made a present to them of his own money in the form of the certificate of deposit already mentioned.

Much is said in the brief about its having been done in secret. Great stress is laid upon the fact that after the death of Charles Harder and his burial at Milton, Oregon, the defendant preceded the plaintiff to Caldwell, where in company with the attorney who had been the confidential adviser of the deceased brother, he went to the bank and procured an examination of the papers in the decedent's private box, with a view, he says, of ascertaining whether there was a will. Complaint is made that the plaintiff had no notice of this search, but the testimony of the bank officers is clear on the point that no paper was abstracted from the box and that the defendant did not even have them in his hands, so that no effect adverse to the defendant can be given to this incident. Charles Harder had the right to dispose of his own property as he chose. It matters not whether it was done upon the housetop or in the closet. He had a right to do what he did and the gift was valid as against the plaintiff, although it diminished the amount of her subsequent inheritance.

5. Moreover, the law of Idaho, admitted in evidence, among other things declares thus:

"The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has in his separate estate; but such power or disposition does not extend to the homestead or that part of the common property occupied or used by the husband and wife as a residence."

This statute seems to have been borrowed from the State of California. It was there construed in *Spreckels* v. *Spreckels,* 172 Cal. 775 (158 Pac. 537), to mean:

"That during the marriage the husband was the sole and exclusive owner of all of the community property, and that the wife had no title thereto, nor interest or

estate therein, other than a mere expectancy as heir, if she survived him'': Citing *Van Maren* v. *Johnson,* 15 Cal. 311; *Greiner* v. *Greiner,* 58 Cal. 119; *People* v. *Swalm,* 80 Cal. 49 (22 Pac. 67, 13 Am. St. Rep. 96); *Tolman* v. *Smith,* 85 Cal. 263 (24 Pac. 743); *Corker* v. *Corker,* 95 Cal. 309 (30 Pac. 541); *Fallbrook I. D.* v. *Abila,* 106 Cal. 362 (39 Pac. 794); *Estate of Burdick,* 112 Cal. 393 (44 Pac. 734); *Spreckels* v. *Spreckels,* 116 Cal. 343 (48 Pac. 228, 58 Am. St. Rep. 170, 36 L. R. A. 497); *Sharp* v. *Loupe,* 120 Cal. 93 (52 Pac. 134, 586); *Cunha* v. *Hughes,* 122 Cal. 112 (54 Pac. 535, 68 Am. St. Rep. 27); *Peiser* v. *Griffin,* 125 Cal. 12 (57 Pac. 690); *Estate of Merchant,* 143 Cal. 539 (77 Pac. 475).

It follows that whether we consider the money as the separate property of Charles Harder, which the evidence seems to have established, or whether it is to be treated as community property, according to the contention of the plaintiff, the result is the same, that the gift of it by Charles Harder to his brothers, absolute and unrestricted as it was, carried to them the title in the same to the exclusion of the plaintiff. It is unnecessary to consider the matter pleaded in abatement by the defendant. The decree of the Circuit Court is affirmed.    AFFIRMED.