Argued April 2, affirmed May 17, 1973

KALLSTROM, *Appellant, v.* KALLSTROM ET AL,
*Respondents.*

509 P2d 1195

*Richard A. Uffelman,* Portland, argued the cause for appellant. With him on the briefs were Jones, Brown, Hansen & Steenson, Portland.

*Gerald R. Pullen,* Portland, argued the cause for respondents Kallstrom. With him on the brief was Garr M. King, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

Plaintiff commenced this suit to obtain reformation of a trust instrument which formed a portion of the property settlement agreement in plaintiff's divorce from defendant Harriet M. Kallstrom. Plaintiff sought payment of certain pre-divorce tax deficiencies from the trust corpus, alleging that a provision for payment of these deficiencies had not been included in the trust due to the mutual mistake of the Kallstroms, the co-settlors of the trust. The trial court found that plaintiff alone was responsible for the tax deficiencies and denied the relief requested. Plaintiff appeals.

It appears from the record that John and Harriet Kallstrom were divorced on May 23, 1967. Under the terms of a negotiated property settlement agreement, which was made a part of the divorce decree, their assets were placed in trust to pay the income to the parties for life with remainder to the parties' two children. The divorce decree contained a provision, paragraph 15, which stated:

"* * * The defendant [John E. Kallstrom] shall pay * * * any and all obligations incurred by or on behalf of the parties prior to February 1, 1967 * * *."

Following the divorce, the Internal Revenue Service audited the Kallstroms' joint income tax returns for 1965 and 1966 and determined that they owed an additional $6,280.37 in personal income taxes. Plaintiff retained legal counsel who succeeded in reducing this liability to $4,635.70 plus interest. The attorney fees for this service amounted to $583.32.

Plaintiff sought reformation to allow the trustee to disburse funds to discharge the tax liabilities and pay the attorney's fees, or in the alternative, to modify the divorce decree to achieve this result. At trial, there was a conflict in the testimony concerning whether the Kallstroms had intended the property settlement to shift full responsibility for unknown tax liabilities to Mr. Kallstrom. Mr. Kallstrom testified:

> "Q. If you had known of the taxes, the federal tax deficiencies billed against the returns of you and Mrs. Kallstrom, that you had filed, would you have settled without providing for payment of the federal taxes?
>
> "A. No."

Mrs. Kallstrom testified:

> "Q. Do you recall discussing with Mr. Kennedy his desire and your desire to protect you from past-due obligations that you did not know anything about?
>
> "A. Yes.
>
> "* * * * *.
>
> "Q. Was there any intention—did you have any idea that this trust would be invaded for any bills such as this, to pay taxes?
>
> "A. No."

Mr. Kennedy, attorney for Mrs. Kallstrom in the divorce proceeding and who negotiated the property settlement in her behalf, testified that during discussions of the settlement he made it clear to Mr. Kallstrom's attorney that the hold harmless provision (that plaintiff was to pay all obligations incurred before February 1, 1967) was being inserted in the agreement to protect Mrs. Kallstrom on all past due obligations, known and unknown.

The court issued a letter opinion that the "out-

standing tax obligation should be taken care of by Mr. Kallstrom in accordance with Paragraph 15 of the divorce decree," and subsequently signed general findings of fact and a decree to this effect.

Plaintiff seeks to attach legal significance to the "offhand thoughts" remarks of the trial court to the effect that plaintiff should prevail. We disagree. Antecedent remarks of the trial court which are not incorporated into the written findings or judgment are not considered to be findings of fact subject to review by this court.

> "* * * It must be remembered that a trial judge's oral decision is no more than a verbal expression of his informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment. * * *" *Ferree v. Doric Co.,* 62 Wash 2d 561, 566-67, 383 P2d 900, 904 (1963).

> "The reason why the rule which the defendant invokes is not applicable here is that a statement from the bench does not constitute a judgment until reduced to an order, decree or judgment. [Citations omitted.]" *Barone v. Barone,* 207 Or 26, 29, 294 P2d 609 (1956).

*Accord,* 89 CJS 469, Trial § 636 (1955). Accordingly, we direct our attention solely to the written findings of the court.

■ Under our statute, ORS 19.125 (3), this court is permitted to retry factual disputes in an appeal of a suit in equity. *See Norman v. Jerich Corporation,* 263 Or 259, 265, 501 P2d 305, 308 (1972). Plaintiff urges that we invoke this rule to re-examine the conclusions reached by the trial court.

The only witnesses on the issue were the litigants and defendant's attorney in the divorce proceeding. This court is reluctant to substitute its own view of the facts for that of a trial judge who has had an opportunity to appraise firsthand the testimony adduced at trial. We run the risk of drawing inferences from the lifeless transcript which we may not have drawn had we been present in the courtroom during the course of the trial.

In *Martin v. Good,* 234 Or 291, 296, 381 P2d 713, 715 (1963), we said, "[W]e are not going to reverse a decree by deciding one witness is to be believed and another witness is not to be believed unless because of peculiar circumstances we are convinced that the trial court's decision in this regard is clearly erroneous."

In this case, the court reached its decision on the basis of conflicting evidence. In *Mignot v. Parkhill,* 247 Or 465, 467, 430 P2d 1007 (1967), we stated, "To obtain reformation the evidence of mutual mistake must be clear, convincing and unambiguous." When plaintiff's argument is reduced to its essence, we are urged simply to accept plaintiff's evidence and disbelieve defendant's evidence. There has been no showing that peculiar circumstances led to an incorrect result in the trial court. Absent such a showing, prudence dictates that we approve the findings of the trial court.

Affirmed.