Argued February 11, affirmed as modified with instructions May 24, 1977.

MONTGOMERY, *Respondent/Cross-appellant,*
*v.*
WADSWORTH PLUMBING AND HEATING
COMPANY, INC., dba LAW & SONS, *Appellant.*
(TC 405-950, SC 24363)

564 P2d 703

Gary M. Bullock, Portland, argued the cause and filed the brief for appellant.

Graham Walker, Portland, argued the cause for respondent/cross-appellant. With him on the brief was Robert M. Mercer, Portland.

Before Denecke, Chief Justice, and Tongue, Howell and Bradshaw, Justices.

BRADSHAW, Justice Pro Tempore.

**BRADSHAW, J., Pro Tempore.**

Plaintiff and defendant entered into an oral agreement whereby plaintiff was to prepare estimates of cost, overhead and profit to be used by defendant in preparing and submitting bids on projects involving installation of utility pipelines. Plaintiff was to supervise the work on projects on which defendant was the successful bidder. Plaintiff had considerable prior experience as a superintendent on installation of such utility lines and in bid preparation of such jobs. The defendant was primarily involved in a general plumbing business and desired to enter the field of utility line installation.

The parties agree in their pleadings that the following provisions were agreed upon:

"(a) MONTGOMERY would prepare bids for LAW & SONS on public and private utility construction projects and by mutual agreement, the parties would decide which jobs would be bid and the amount bid;

"(b) The bids were to be submitted by and in the name of LAW & SONS;

"(c) The bids were to be broken into certain components of labor, material and equipment at projected cost plus an amount to cover LAW & SONS' overhead and profit;

"(d) Upon a successful bid and the letting of the contract to LAW & SONS, MONTGOMERY agreed to supervise LAW & SONS' employees, procure necessary materials and equipment for and in the name of LAW & SONS and to complete the work as efficiently and expeditiously as possible;

"(e) Upon completion of a job, LAW & SONS was to keep that portion of the bid price allocated to overhead and profit;

"(f) MONTGOMERY was to share savings realized by LAW & SONS in the bid allocations to labor, materials and equipment."

Plaintiff seeks to recover certain sums from defendant claimed to be plaintiff's share, pursuant to the agreement, of extraordinary profits over and above

costs, overhead and profit referred to as "savings on costs." The plaintiff's claim is based upon three separate projects or jobs which defendant was successful in bidding on. These three jobs were designated 501, 502-503 and 505. Plaintiff abandoned a claim for money due on a fourth job with the Port of Portland designated job 504.

Defendant denies any money due and owing plaintiff. Defendant claims that the agreement was to allow 17 percent of gross on each job as overhead and profit. Defendant also contends that the agreement provided that plaintiff would participate equally with defendant in any losses incurred on any of the jobs. Defendant, in a cross-complaint of several causes, claims plaintiff was negligent in his bidding analysis and supervisory capacities and, as a result, the combined effect of the aforementioned four jobs and a fifth job was to create a substantial loss to the defendant, and defendant seeks to recover one-half of such total loss from plaintiff.

Proposed findings were submitted to the trial court by each party. The trial court thereupon made findings resulting in a judgment for plaintiff for money due on jobs 501 and 502-503, and denying defendant judgment on any and all counterclaims.

Defendant on appeal alleges error by the trial court in three respects: (1) in determining defendant waived or was estopped to claim 17 percent as an overhead and profit figure, even though the court found that 17 percent was agreed upon; (2) in determining that plaintiff was not to share in losses on any of the jobs; and (3) in finding against defendant upon its counterclaims when there was substantial evidence to support defendant's counterclaims.

Plaintiff cross-appeals alleging error of the trial court in two respects: (1) in denying plaintiff's recovery on job 505 in that the uncontroverted evidence showed a "cost saving" at time of plaintiff's discharge; and (2) that the offset against plaintiff's claims was

$2,007.30 rather than $2,587 as found by the trial court.

■ It is well established, of course, that a general finding of fact by a trial court in an action at law tried without a jury is the equivalent of a jury verdict and cannot be set aside by this court when supported by any substantial evidence. *Hawkins v. Teeples and Thatcher*, 267 Or 151, 515 P2d 927 (1973); *Gordon Creek Farms v. Layne*, 230 Or 204, 358 P2d 1062, 368 P2d 737 (1962); *Honeywell, Admx., v. Turner*, 214 Or 700, 332 P2d 638 (1958).

The trial court did not make a finding that the defendant waived or was estopped from asserting an overhead and profit figure of 17 percent, nor did the trial court make a finding that the 17 percent figure was agreed upon. The only finding made was that "neither bids or billing prices were determined with reference to a 17% overhead and profit figure."

Defendant's president as a witness testified that no agreement was ever reached between the parties as to a percentage figure to be used in determining overhead and profit. In making up the written bid estimates plaintiff used a unit dollar amount for overhead and profit. These amounts calculated to be 8 to 10 percent of gross price. Plaintiff's estimates for bids were presented to defendant, and defendant's chief estimator then used these estimates to prepare and submit final bids. Defendant had the right to, and did in some instances, alter and modify plaintiff's estimates in making up the final bid price. The trial court in making its findings adopted the percent for overhead and profit that was reflected in plaintiff's bid estimates as adopted by defendant in preparing the actual bid on the various jobs.

■ It is difficult to determine the basis for defendant's claim that the trial court found that the parties agreed upon a 17 percent figure for overhead and profit. If defendant relies on the trial court's comments at the close of the trial and prior to making written findings,

such reliance is without merit. The trial court simply commented that the defendant expected to get 17 percent as a figure for overhead and profit. Moreover, it must be noted that antecedent remarks of the trial court which are not incorporated in the written findings or judgment are not considered to be findings of fact subject to review by this court. *Kallstrom v. Kallstrom,* 265 Or 481, 509 P2d 1195 (1973); *Ferree v. Doric Co.,* 62 Wash 2d 561, 383 P2d 900 (1963).

■■ The testimony of plaintiff and that of defendant's president was in direct conflict as to an agreement for the plaintiff to participate in losses which might be incurred on any of the jobs. Defendant, in claiming such an agreement, had the burden of proof. The court's finding that plaintiff was not to participate in losses is supported by substantial evidence.

■ There was no competent evidence that the agreement between plaintiff and defendant constituted a joint venture and therefore plaintiff by operation of law was jointly responsible for losses. Plaintiff was an employe of defendant paid at a set wage scale. The agreement simply allowed plaintiff to earn a bonus by his efforts in assisting defendant in obtaining a new type of construction work.

■ The evidence presented by defendant fell far short of proving a breach of contract based on negligence of plaintiff in preparing bid estimates and supervising the jobs.

The court's finding that plaintiff did not breach the agreement is supported by substantial evidence.

Defendant's specifications of error are all without merit and the trial court's findings and conclusions in regard to those specifications are affirmed.

■ Plaintiff claims he was wrongfully terminated prior to completion of job 505 and there were anticipated "cost savings" to be realized on that job at the time of termination. J. P. Law, son of defendant's president, dismissed plaintiff on November 6, 1973,

for alleged interference with company business. Plaintiff was rehired by defendant's president on November 9, 1973, and plaintiff left of his own accord on November 20, 1973. The 505 job was basically completed at that time. However, it was necessary later to return to the job and correct some defects. The ultimate result was a loss on job 505 after deduction of costs, overhead and profit at the percentage rate figured by plaintiff. The evidence fails entirely to prove that such loss was due to the short dismissal period of the plaintiff. Plaintiff was not entitled to anticipated "cost savings," only to actual "cost savings." The trial court's finding that job 505 resulted in a loss is supported by substantial evidence.

■ Plaintiff concedes that an offset of $2,007.30 representing advances should be allowed against the monies due him. Plaintiff's Exhibit 4, an accounting by defendant, itemizes advances to the plaintiff totaling $2,587.30, of which $330 was on a job known as "Leaseheld" and $250 was on a job known as "Eola." Both such jobs are foreign to this case and could not have been advances on the jobs in question. Defendant's witness Hopkins, the accountant for defendant, testified that $2,007 was advanced to plaintiff on job 501, being the Beaverton job as designated on Exhibit 4. There is an absolute lack of evidence that the two advances totaling $580 were for any of the jobs involved in this case. The trial court's finding of "offset" in the amount of $2,587 was not wholly supported by any evidence. Such finding was supported only in the amount of $2,007. Therefore, the judgment of the trial court will be modified by increasing the amount of judgment granted to plaintiff by $580 to the sum of $8,574.

The judgment of the trial court is affirmed as modified and the case remanded to the trial court with instructions to enter an emended judgment for plaintiff in the amount of $8,574.