## WILSON et al,
*Respondents,*

*v.*

## KARTES et al,
*Appellants.*

## (L85-0225; CA A43728)

762 P2d 1054

Colleen O'Shea Clarke, Portland, argued the cause for appellants. With her on the briefs were James P. Draudt and Weiss, DesCamp and Botteri, Portland.

Ray Fechtel, Eugene, argued the cause for respondents. With him on the brief was Ray Fechtel, P.C., Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants appeal a judgment for plaintiffs for damages to their mining claims in this action for trespass and ejectment. We affirm.

The action was tried without a jury. Defendants did not present any evidence. Defendant Kartes did not appear. At the close of the evidence, plaintiffs moved for a "directed verdict and judgment," because their evidence was unrebutted. All parties and the court interpreted plaintiffs' motion as a request that, on the evidence, the court grant them a judgment. We interpret plaintiffs' motion similarly and also interpret the court's judgment as a general verdict for plaintiffs. We review for substantial evidence to support it. *Montgomery v. Wadsworth Plumbing*, 278 Or 455, 459, 564 P2d 703 (1977).

From the evidence, the court could have found that, after making a mineral discovery, plaintiffs filed location notices in Douglas County for mining claims on January 22, 1979, and May 22, 1980 (the Jerry Run claim and Jerry Run II claim, respectively). Defendant Kartes filed location notices for three claims in the same general area on November 15, 1980 (Bear Grass Claims I, II and III). Portions of the Bear Grass claims overlapped portions of the Jerry Run claims. On November 25, 1980, plaintiffs amended the location notice for the Jerry Run claim, and on November 10, 1981, they amended the location notice for the Jerry Run II claim. On November 1, 1982, plaintiffs relocated both claims as Wilson II and Wilson III, respectively. The relocated claims encompassed substantially the same land as the Jerry Run claims.[1] In 1983 and 1984, plaintiffs constructed a mine, including tunnels and shafts, on the Wilson II and Wilson III claims and removed ore from their mine.

In October, 1984, defendants entered plaintiffs' Wilson II and Wilson III claims and destroyed plaintiffs' mine, a shack and an outhouse. Defendants warned plaintiffs to stay out of the area and occupied plaintiffs' dwelling on the site. Plaintiffs did not attempt to reenter the claims. Gerald Wilson testified that plaintiffs were afraid to assert their rights to enter the claim, because defendants were armed. An

---

[1] Defendants do not argue that they have additional rights because one of the relocated claims enclosed a small additional territory.

employe of defendants removed corner markers that plaintiffs had placed on their claims. Defendants removed ore from plaintiffs' claims.

■    The owner of a validly located mining claim has the right to exclude others, and subsequent locators who enter without permission are trespassers whom the owners may eject. *See Risch v. Wiseman*, 36 Or 484, 485, 59 P 1111 (1900). The court could have found from the evidence that, not later than November 1, 1982, plaintiffs had met all of the requirements for a valid location of a quartz lode claim, including posting and marking, when they relocated their claims as Wilson II and Wilson III.[2] The court could also have found that defendants trespassed on those claims. Gerald Wilson testified that the mine workings and buildings were on the Wilson claims and that he saw defendants enter the claims.

---

[2] The statutory requirements for valid location of a lode claim are contained in ORS 517.010 and ORS 517.030. ORS 517.010 provides:

"(1) Any person, a citizen of the United States, or one who has declared an intention to become such, who discovers a vein or lode of mineral-bearing rock in place upon the unappropriated public domain of the United States within this state, may locate a claim upon such vein or lode by posting thereon a notice of such discovery and location. The notice shall contain:

"(a) The name of the lode or claim.

"(b) The names of the locators.

"(c) The date of the location.

"(d) The number of linear feet claimed along the vein or lode each way from the point of discovery, with the width on each side of the lode or vein.

"(e) The general course or strike of the vein or lode as nearly as may be, with reference to some natural object or permanent monument in the vicinity, and by defining the boundaries upon the surface of each claim so that the same may be readily traced.

"(2) Such boundaries shall be marked within 30 days after posting of such notice by six substantial posts, projecting not less than three feet above the surface of the ground, and not less than four inches square or in diameter, or by substantial mounds of stone, or earth and stone, at least two feet in height, to wit: one such post or mound of rock at each corner and at the center ends of such claims."

ORS 517.030 provides:

"The locator shall, within 60 days from the posting of the location notices by the locator upon the lode or claim, file for record with the clerk of the county where the claim is situated, who shall be the custodian of mining records and miners' liens, a copy of the notice posted by the locator upon the lode or claim and shall pay the clerk a fee as set by ordinance of the county governing body for such record, which sum the clerk shall immediately pay over to the treasurer of the county and shall take a receipt therefor, as in case of other county funds coming into the possession of such officer. The clerk shall immediately record the location notice."

He also testified that he saw defendant Kartes on his claims and that she threatened him and ordered him to stay off the claims.

■■ Defendants contend, however, that the court erred, because plaintiffs' attempted locations of January, 1979, and May, 1980, are void and, therefore, plaintiffs' subsequent relocations of November, 1982, are invalid.[3] A locator is permitted to meet the statutory requirements at any time before adverse rights attach. *See Sharkey v. Candiana,* 48 Or 112, 122, 85 P 219 (1906). The record does not show that defendants fulfilled the statutory requirements for a valid location before plaintiffs relocated their claims in November, 1982. That was defendants' burden. *See Inman et al v. Ollson et al,* 213 Or 56, 63, 321 P2d 1043 (1958). The record shows that they filed location notices, but not that they marked the claim on the ground or posted notices. Defendants, therefore, cannot claim a paramount right based on deficiencies in plaintiffs' prior notices. If plaintiffs' original location notices were deficient, their later location notices were not, and when defendants entered these claims in 1984, they were trespassers and could be ejected.

■ Defendants assign as error that the court refused to grant their request for postponement of trial due to the "illness" of defendant Kartes. They contend that the court abused its discretion, because it had no reason to believe that her illness was a sham. They argue that it was unreasonable to compel an elderly woman suffering from dizziness and diarrhea to travel 40 miles to testify and that plaintiffs would not have been prejudiced by the postponement. The record reflects, however, that the court had previously granted a postponement because Kartes was ill and that it agreed to take her testimony at trial by telephone. During the trial, the

---

[3] Defendants contend that plaintiffs' filings are void because they did not comply with ORS 517.010(1)(e), which requires that a location notice include

"[t]he general course or strike of the vein or lode as nearly as may be, with reference to some natural object or permanent monument in the vicinity, and by defining the boundaries upon the surface of each claim so that the same may be readily traced."

Moreover, ORS 517.065(1) provides that:

"[A]ll locations or attempted locations of quartz mining claims subsequent to December 31, 1898, that do not comply with ORS 517.010 to 517.030 are void."

court attempted to call her on the telephone, but apparently she was not at home. Moreover, defendants did not make an offer of proof of her testimony. The court did not abuse its discretion.

■■ Defendants' remaining assignments of error relate to damages. The court awarded damages on the basis of the cost to repair the damage to plaintiffs' mining improvements. That is the proper measure of damages when, as here, the improvements can be repaired. *See Hanset v. General Construction Company,* 285 Or 101, 105, 589 P2d 1117 (1979). Defendants argue, however, that the court "lacked an adequate evidentiary basis for its award of general damages," because plaintiffs did not present evidence that the amounts that they testified were needed to repair the mine were "reasonable."[4] They do not need to prove reasonableness, and defendants cite no authority that holds that they do.

■ Defendants also claim that the court's award of punitive damages was unjustified. We disagree. Gerald Wilson testified that defendant Kartes admitted to him that she knew that his claims were superior to hers and that, nonetheless, defendants destroyed plaintiffs' property and kept them by force from reentering their claims. The court could properly infer that defendants deliberately disregarded plaintiffs' rights. *See Wolf v. Nordstrom,* 291 Or 828, 835, 627 P2d 1280 (1981).

Affirmed.

---

[4] Although defendants refer to the "cost of construction," they apparently refer to the cost of repair.